(C. D. 372)

Oy Wo Tong Co. et al. v. United States

United States Customs Court, Third Division

(Decided August 16, 1940)

*Lawrence & Tuttle* (*Frank L. Lawrence* and *George R. Tuttle* of counsel), for the plaintiffs.

*Webster J. Oliver,* Assistant Attorney General (*John J. McDermott Daniel G. McGrath,* and *Alfred A. Taylor, Jr.,* special attorneys), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiffs seek to recover sums of money claimed to have been illegally collected and paid as customs duties upon importations of certain Chinese commodities. Nine protests are involved. In all except 481730–G, which arose under the Tariff Act of 1922, the merchandise was imported during the lifetime of the Tariff Act of 1930. Assessment for duty was made in all of the protests excepting 545036–G and said 481730–G at either 35 per centum ad valorem under paragraph 775 as vegetables prepared, or under paragraph 752 as fruits prepared. In protest 545036–G assessment was made at 10 per centum ad valorem under paragraph 34 as drugs advanced, on certain commodities, and at 35 per centum under paragraph 752 as fruits prepared, on others. As to the last-named protest the importers claim the commodities are free of duty either under paragraph 1669 as crude drugs or under paragraph 1722 as crude vegetable substances. As to the remaining protests (except 481730–G) claim is made for free entry under said paragraph 1669, or, if dutiable, at 10 per centum ad valorem under paragraph 34 as drugs advanced, or at 10 or 20 per centum under paragraph 1558 as unenumerated articles. In the case of said protest 481730–G, which arose under the act of 1922, assessment was made at 10 per centum ad valorem under paragraph 34 of that act as drugs advanced and claim is made for free entry under paragraph 1567 of the same act as crude drugs,

or under paragraph 1622 as crude vegetable substances. These paragraphs were reenacted in the act of 1930 without change and will therefore not be set forth below.

The pertinent paragraphs of the statute involved are as follows:

## TARIFF ACT OF 1930

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; soy beans, prepared or preserved in any manner; bean stick, miso, bean cake, and similar products, not specially provided for; soups, soup rolls, soup tablets or cubes, and other soup preparations, pastes, balls, puddings, hash, and all similar forms, composed of vegetables, or of vegetables and meat or fish, or both, not specially provided for, 35 per centum ad valorem; sauerkraut, 50 per centum ad valorem; pimientos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound.

PAR. 752. Fruits in their natural state, or in brine, pickled, dried, desiccated, evaporated, or otherwise prepared or preserved, and not specially provided for, and mixtures of two or more fruits, prepared or preserved, 35 per centum ad valorem; fruit pastes and fruit pulps, 35 per centum ad valorem; candied, crystallized, or glace apricots, figs, dates, peaches, pears, plums, prunes, prunelles, berries, and other fruits, not specially provided for, 40 per centum ad valorem: *Provided*, That a mixture of two or more kinds of candied, crystallized, or glace fruit shall bear the highest rate of duty applicable to any of the components.

PAR. 34. Drugs, such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; any of the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, but which are advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs and the prevention of decay or deterioration pending manufacture, 10 per centum ad valorem: *Provided*, That the term "drug" wherever used in this Act shall include only those substances having therapeutic or medicinal properties and chiefly used for medicinal purposes: *And provided further*, That no article containing alcohol shall be classified for duty under this paragraph.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

## FREE LIST

PAR. 1669. Drugs such as barks, beans, berries, buds, bulbs, bulbous roots, excrescences, fruits, flowers, dried fibers, dried insects, grains, herbs, leaves, lichens, mosses, logs, roots, stems, vegetables, seeds (aromatic, not garden seeds), seeds of morbid growth, weeds, and all other drugs of vegetable or animal origin; all the foregoing which are natural and uncompounded drugs and not edible, and not specially provided for, and are in a crude state, not advanced in value or condition by shredding, grinding, chipping, crushing, or any other process or treatment whatever beyond that essential to the proper packing of the drugs

and the prevention of decay or deterioration pending manufacture: *Provided,* That no article containing alcohol shall be admitted free of duty under this paragraph.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

Commodities with identical or similar Chinese names have been before this court on numerous occasions and in the case of *Him Sing Chong* v. *United States,* T. D. 47527, 67 Treas. Dec. 245, we set forth a table in which were listed the commodities there involved by their common name, by the name given in the Chinese Materia Medica, and by the Latin name as far as procurable. In the instant case it has been stipulated that this table enumerates commodities the same as the imported articles here involved. We therefore set forth said table herewith:

| Exhibit No. | Common name | Chinese Materia Medica (Exhibit 30 for identification) | Latin name |
|---|---|---|---|
| 1 | Bak hop (Pak hop) Lily petals, lily bulbs, lily scales. | Ych-pai-ho p. 240 | *Lilium Brownii.* |
| 1 2 | Hoi shin lien | Lien tsu or Lien shi pp. 278/9 | *Nelumbium.* |
| 1 3 | Hoi pak lien (lotus nuts) | Lien jee | *Speciosum.* |
| 4 | Sui sit | Ch'ien chi p. 169 | *Euryale Ferox.* |
| 5 | Wai san (sliced) | Huai-shan-yao p. 151 | *Dioscorea.* |
| 6 | Wai san in stick form | | |
| 7 | Yuk chuck | Yü-chu p. 340 | *Polygonatum officinale.* |
| 8 | Sar sam | Sha-shen p. 15 | *Adenophora verticilata.* |
| | Sar sum | | |
| 9 | Lo hon quo | Lo-hon-quo p. 337/8 | *Podocarpus macrophylla.* |
| | Lo hon qua | | |
| 10 | Yuen yuk (dried meat of) | Lung-yen p. 282 | *Nephelium longana.* |
| 11 | Mok qua | Mu-kua p. 93 | *Carica papaya.* |
| 19 | Ginseng | Jen-shen p. 15, 301 or Shen-ts'ao. | *Panax ginseng.* |

[1] Exhibits 2 and 3 are slightly different caused by the fact that the integumen has been removed in Exhibit 3.

There were also introduced in evidence by the plaintiffs Exhibits A to KK, inclusive, being samples of the various items of merchandise involved herein, identified as follows:

Exhibits A—Bak hop
B —hoi shin lien
C —hoi pak lien
D—sui sut
E—wai san (sliced)
F—wai san (stick form)
G—yuk chuck
H—sar sum (cut)
HH—sar sum (uncut)
I—lo hon qua
J—yuen yuk
K—mok qua (not sliced)
KK—mok qua (sliced)

Defendant's exhibits of the instant merchandise were introduced in evidence and marked 2–14 inclusive. These exhibits, representing the same character of merchandise, were in larger quantities than plaintiffs' samples, and were introduced so that sufficiently large samples might be withdrawn for anaylsis which was ordered by the court. As the testimony produced was in most instances based upon the exhibits introduced by the plaintiffs, we will refer to those exhibits as there designated alphabetically, in our discussion of the issue presented.

As stated above, these and similar Chinese commodities have been the subject of decision by this court and the Court of Customs and Patent Appeals on numerous occasions. The three leading cases are *Him Sing Chong & Co. et al.* v. *United States*, 67 Treas. Dec. 245, T. D. 47527; *United States* v. *Yick Shew Tong Co.*, 25 C. C. P. A. (Customs) 255, T. D. 49392, and *Jay W. Rapp & Co. et al.* v. *United States*, 2 Cust. Ct. 331, C. D. 155. In the case of *United States* v. *Yick Shew Tong Co.*, *supra*, the earlier cases were reviewed in detail and we deem it unnecessary to extend this decision by a discussion of those cases. The holdings were not uniform due to the dissimilarity of the testimony adduced. However, in *Him Sing Chong & Co. et al.* v. *United States*, *supra*, this division endeavored in a detailed and exhaustive opinion to settle the dutiable status of these commodities. That decision held in substance that in view of the testimony the commodities were edible and therefore excluded from the drug paragraphs, 34 and 1669, *supra*. It was appealed to the Court of Customs and Patent Appeals but the appeal was abandoned. In the *Yick Shew Tong Co.* case, *supra*, the dutiable status of the commodities hoi pak lin, yuen yuk, sui sit, and pak hop was before another division of this court and, in view of the record showing the use of the commodities, the Court of Customs and Patent Appeals held they were not edible in the common and usual understanding of that term, and allowed free entry as drugs, affirming the judgment of this court.

Thereafter in the *Rapp* case, *supra*, commodities described as yuk juk, pak hop, lin tsze, and sha sum were held to be edible and therefore excluded from paragraph 1669, *supra*. This decision was not appealed.

It will be recognized by an examination of the various decisions that the commodities have variable spellings but generally can be readily recognized and identified with the spellings used in the instant case.

From this brief summary of some of the late cases it will be seen that the issue resolves itself into a determination of the question of whether or not the commodities are "edible."

In the *Yick Shew Tong Co.* case, *supra*, it was held that:

The word edible, we think, must be given its common meaning and construed in the sense of its ordinary use and acceptance. Webster's New International Dictionary gives the adjective meaning of the word as "Fit to be eaten *as food;* eatable; esculent; as, *edible* fishes." * * *.

The court further stated as follows:

We have then this situation: The testimony establishes that among those who use the products at issue they are regarded as medicinal in character and are chiefly used for medicinal purposes and no vegetable use of them is shown except perhaps in two instances where purely experimental trials were made by persons who do not claim to use the articles regularly or habitually.

We think it unnecessary to review the testimony in detail in the instant case. The record is voluminous and to an extent repetitious.

The plaintiffs and defendant have produced additional and new witnesses in corroboration of the testimony heretofore given supporting the divergent views on the controversy. It would extend this decision unnecessarily to summarize the same or to set it forth in detail. Both briefs have with great pains performed this duty and carefully prepared briefs on the legal questions involved have been submitted. It is necessary, however, in order to make this decision understandable, that we state as briefly as possible what we believe to be the effect of the testimony.

A number of Chinese witnesses were called by the plaintiffs and their testimony is to the effect that they use these commodities for medicine and not for food. In fact few of them knew of any food use. The Government produced the testimony of Dr. Archibald Wallace Dunn, an American doctor of medicine who had practiced in China, of Dr. Walter C. Blasdale, a professor of chemistry in the University of California, who has testified in other cases before this court on the question of the dutiability of Chinese drugs, and of Mr. Harry Lewis, the Government examiner of this type of merchandise. There was also produced on behalf of the Government the testimony of Miss Bella Kahn, a chemist in the United States Appraiser's laboratory in New York. All of these witnesses, with the exception of Miss Kahn, testified to a use of the various commodities as food. The Government chemist, Miss Kahn, testified to the fact that she had made an analysis to determine the composition of the various exhibits, which analysis was admitted in evidence as defendant's Exhibit 15. This analysis as we view it is of little aid in determining the question here involved, in that it did not establish the presence or absence of medicinal properties in the commodities analyzed. The conclusion of the chemist that there is no evidence that the samples contain "any alkaloidal or cathartic drugs" is not sufficient, in our view, to show that such commodities do not have medicinal or therapeutic properties. The analyst admitted that besides chemical tests "there is always the physiological test—administering it either to animals or humans." This was corroborated by the witness Roy R. Rogers, who stated that "for determining the therapeutic value of vegetable substances," the "final test is the actual physiological effect under test on animals or test on human beings."

Although Dr. Dunn stated in his testimony that he was familiar with all of the commodities represented by the exhibits except Exhibit D (sui sit) he was able to identify only bak hop, lotus nuts, wai san, sar sum, and yuen yuk, and his description of sui sit and mok qua did not agree with the description of those commodities in the record of this and the earlier cases.

The Government examiner, Mr. Harry Lewis, an American of Chinese parentage, testified to the use of all of the articles with the

exception of mok qua (Exhibits K and KK). Mrs. Lewis, his wife, who is of Chinese descent and has lived in this country since childhood, most of the time in New York City, testified that she is familiar with luk mei, a soup or broth which is made from six ingredients, wai san, sar sum, bak hop, yuen yuk, and two more, and that she buys all of these ingredients in grocery stores, not drug stores.

The plaintiffs produced eleven witnesses, mostly Chinese, who testified that the commodities involved are not edible, i. e., not commonly or generally used as food. These witnesses included persons who import, buy, sell, prescribe, and use these articles. While not all of them were familiar with all of the involved commodities, the result of their combined testimony is that the articles are chiefly used as medicine. In fact they stated that they have no food use. It is true that some of them testified that certain of the exhibits were used as food in their fresh form. However, we must consider the merchandise before us as it appears in the condition as imported, i. e., dried. We think the testimony of these witnesses is entitled to great weight inasmuch as they are the ones who purchase the commodities and consume them, in accordance with the medical customs of their race. Under the holding in the *Yick Shew Tong Co.* case, *supra*, the commodities would not fall within the term "edible," that is, "fit to be eaten as food," the preponderance of the evidence being that they have no food use.

The defendant in its brief alleges that the testimony of Che Ming Chow, one of plaintiffs' witnesses, is entitled to little weight because he describes himself as a drugless doctor and therefore should not prescribe drugs. It is to be noted that this witness also described himself as an herbalist and testified to the medicinal purposes for which he had prescribed each of the exhibits involved. Doubtless as an herbalist he has made a study of medicinal herbs. In dealing with a commodity used chiefly by members of our foreign population we think the court in weighing the testimony given by persons whose native tongue is other than English, should take into account the differences of language and customs as between such witnesses and those familiar with the nuances of our language.

Moreover, the curing of disease is the same problem in one country as in another and medical science is constantly searching for palliatives. It appears from the bulletin published by the Library of Congress, Division of Orientalia, in 1937, which is a reprint from the Report of the Librarian of Congress for the fiscal year ending June 30, 1937 (an official document of which we can take judicial notice), that they have cataloged certain treatises by the medical profession giving the history of the use of botanical drugs as described by Chinese publications as early as 1596. Further, one of the herbs listed by these so-called herbalists had been used from remote antiq-

uity, its Chinese name being ma huang, known to modern American medicine as ephedrine and in use by modern medicine only 10 years or so. It has been determined that dried ma huang contains alkaloid ephedrine found to be useful, and, we may say, largely used in the treatment of asthma. It may be that modern research will discover an active medicinal element in many other Chinese plants used by the herbalists of that country for curative purposes. In any event, the testimony in this case shows that a majority of the witnesses who testified believe in the curative effect of these commodities.

One of the plaintiffs' witnesses, Mr. Paul Cochen Lee, who stated that he had had 9 years' experience as a teacher and is vice principal of a Chinese school in San Francisco, and had studied Chinese medicine under his father who was a physician and a teacher in a medical school, stated that he had used the articles here involved both in China and the United States for their medical value. This witness named a number of publications on Chinese medicines and drugs and their use, among them being the Chinese Materia Medica; the Chinese Encyclopedia Medica; Identical Account of Medical Plants in China; Chinese Materia Medica, Vegetable Kingdom; Chinese Medicinal Plants by Bernard E. Read. These works all contain references to the commodities now before us and most of them give their properties and medicinal uses. We think in view of the record that we can consult such of these authorities as are in the English language, and that they are important in establishing the medicinal use of the instant commodities.

Having decided that the commodities are drugs within the meaning of the tariff act and the decisions thereunder, we must then determine whether they fall within the dutiable provision in paragraph 34 for drugs advanced, or whether they are free of duty as crude drugs under paragraph 1669 of the Tariff Act of 1930, or the correlative provision in paragraph 1567 of the act of 1922 in the case of the commodities involved in protest 481730–G which arose under that act. That protest presents a stronger case for the importers in that the commodities there involved were assessed as drugs, thereby raising the presumption of correctness of that classification.

It has been conceded by plaintiffs' counsel in the brief filed that the sliced sar sum (Exhibit H), sliced wai san (Exhibit E) and sliced mok qua (Exhibit KK) are advanced. As to the remaining exhibits, with one exception, we find that they are crude drugs. That exception consists of Exhibit G, yuk chuck, yok chock or yoke yuke, which, it is apparent from an inspection of the sample, is also advanced, having been sliced. As to the commodity known as sui sut (Exhibit D), plaintiffs claim that the court hearing the case improperly excluded testimony as to the purpose of the removal of a portion of the shells.

Although we think the court might very properly have admitted testimony as to the form in which this article is imported, that is, that it contains whole kernels which are valueless for drug purposes, as stated in the offer of proof, nevertheless, we think the record as made is sufficient to show that it is necessary to remove a portion of the shell of these seeds before they are thoroughly dried in order to prevent their becoming pulverized, as would be the case were such portion removed after they were thoroughly dried, and that the portion of the shell thus removed has no drug value. We find that the sui sut (Exhibit D) is crude, nothing having been done to it except to get the article by itself.

At the hearing counsel for the Government moved to strike from the record the testimony of the witnesses Robinson, Blinn, Fritz, and Cramer in so far as such testimony referred to description of any type of merchandise or its characterization on any invoice. We deny this motion with the observation that the testimony has very little if any weight on the issue here involved.

Objection was also made on the part of the Government to the testimony of plaintiffs' witness Mr. Louis K. Tse, on the ground that having acted as interpreter earlier in the trial he was disqualified from testifying, apparently because throughout all of the hearings the Government attorney had moved to exclude witnesses from the courtroom. Decision on the objection was reserved for the division. On this point we hold that the witness was not disqualified and overrule the Government's objection.

There was introduced in evidence as Exhibit 1 the following stipulation:

Protests as per annexed schedule on San Francisco docket of June 13, 1938; subject, Vegetables prepared.

STIPULATION

It is hereby stipulated by and between counsel for plaintiffs and the Assistant Attorney General for the United States that the merchandise contained in glass jars which are marked with the letters A to K inclusive is similar in all material respects to the merchandise covered by the protests enumerated below and invoiced under the names appearing in annexed schedule.

It is further stipulated that each of the items marked in the schedule with the letters A to K inclusive correspond in identity with the merchandise contained in each of the glass jars marked A to K inclusive, and that subject to the approval of the court said jars and the merchandise contained therein may be admitted in evidence as plaintiffs' exhibits A to K inclusive.

San Francisco, June 13, 1938.

LAWRENCE & TUTTLE
(Sgd.) GEO. R. TUTTLE
Attorneys for Plaintiffs.
(Sgd.) JOHN J. McDERMOTT
For the Assistant Attorney General
Attorney for the United States.

*Schedule*

| Docket and protest nos. | Importer | Invoice descriptions | |
|---|---|---|---|
| 1317 944109G/61752 | Oy Wo Tong Co | 13—2 hoy sheung lin | (B) |
| | | 25—4 wai san pien | (E) |
| 1336 944101G/60386 | Tin Bow Tong Co | 40/1 hang chuen shan (wai san) | (F) |
| | | 42/4 ngoi hop kon (bak hop) | (A) |
| | | 45/6 kwat shan tiu (wai san) | (F) |
| | | 63—1 hang chuen shan (wai san) | (F) |
| | | 64—2 cho shan chet (wai san) | (F) |
| | | 77 sheung sha sum (sar sum) | (H) |
| | | 78/9 hoi paklin | (C) |
| | | 101/2 yuen yuk | (J) |
| | | 111 tai hon kor (lo hon qua) | (I) |
| 1337 944102G/60385 | " | 19/21 dried lily bulbs (bak hop) | (A) |
| | | 22 loo hon kor | (I) |
| | | 62 sar sum | (H) |
| | | 63/5 yoke chok ping | (G) |
| | | 70/2 lotus nuts, broken | (C) |
| | | 73/5 wai san | (F) |
| | | 77 wai san ping | (E) |
| | | 82 sie sat | (D) |
| 1338 944104G/60001 | " | 4/5 sai chok pein (yoke chok) | (G) |
| | | 9 kwat cheun san (wai san) | (F) |
| | | 10/13 ngoi pak hop | (A) |
| | | 14/15 hong chuen san (wai san) | (F) |
| | | 22/4 hoi pak lin | (C) |
| | | 35 hard nuts (lo hon quar) | (I) |
| | | 44 hard nuts (lo hon quar) | (I) |
| | | 73 sui sut | (D) |
| | | 91 lung ngan pulp | (J) |
| 1342 944103G/60034 | Tong Chun Gauk | 5—2 chuen mok kwar | (K) |
| | | 16—1 yu yuk | (J) |
| | | 23—2 sha sum | (H) |
| | | 24—7 ching shui shut | (D) |
| | | 25—1 yuk chuk | (G) |
| | | 25—14 yee shan tiu (wai san) | (F) |
| | | 26—1 chuen shan (wai san) | (F) |
| | | 27—7 mak hung (yuk chuk) | (G) |

Having decided that all of the commodities involved are drugs, and in view of the above stipulation, we hold as follows:

That the items enumerated in the stipulation set forth above, with the exception of those followed by the letters G, H, and E in the column designated "Invoice descriptions" are properly free of duty under paragraph 1669 of the Tariff Act of 1930 as crude drugs. That the items enumerated in said stipulation followed by the letters G, H, and E in said column, are properly dutiable as drugs advanced under paragraph 34 of the same act.

That in protest 481730–G the testimony shows that the commodity covered by item 2, case 1, is similar to Exhibit B and that the commodity covered by item 3, case 1, is similar to Exhibit C. We therefore sustain the claims for free entry as crude drugs under paragraph 1567 of the Tariff Act of 1922, as to those items.

As to protest 545036–G the testimony discloses that the merchandise in case 3 consists of bak hop similar to Exhibit A herein; that the merchandise covered by case 19, item 9, consists of sui sut similar to Exhibit D and that covered by case 21, item 6, consists of yuen yuk similar to Exhibit J. We therefore sustain the claims for free entry as crude drugs under paragraph 1669, Tariff Act of 1930, as to those items.

As to .protest 938217–G we accept the statements of counsel for the plaintiffs at the hearing, which were not objected to by the Government, that invoice item 43, sar sum, which is marked with the letters "HH" and the initials "HLW," and invoice items 44 and 45, both of which are marked with the letter "E" and the initials "HLW," as an agreement that the items enumerated are similar to Exhibits HH and E, respectively, herein.   We therefore sustain the claim for free entry under paragraph 1669 of the same act as to the item numbered 43 on the invoices, marked with the letters HH and the initials HLW. The protest is also sustained in so far as it claims the merchandise dutiable at 10 per centum ad valorem under paragraph 34 of the same act, as to the invoice items 44 and 45, marked with the letter E and the initials HLW.

In protest 848655–G we also accept counsel's statement at the hearing as an agreement that invoice case 8, item 1, "Chuen Mogh," marked with the letters "KK" and the initials "HLW," is similar to the item Exhibit KK.   However we are unable to find an article on the invoice described as "Chuen Mogh" and therefore are constrained to overrule that protest.

Judgment will be rendered accordingly.   It is so ordered.