(C. D. 548)

Song Kee & Co. *v.* United States

United States Customs Court, Third Division

(Decided November 5, 1941)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard F. Weeks*, special attorneys), for the defendant.

Before Cline and Keefe, Judges

Cline, Judge: This is a suit against the United States in which the plaintiff seeks to recover a portion of the amount paid as customs duties upon an importation of red melon seeds. The collector of customs at the port of San Francisco assessed duty upon the seeds at the rate of 3 cents per pound under the provision for garden or field seeds, not specially provided for, in paragraph 764 of the Tariff Act of 1930, as modified by the trade agreement between the United States and The Netherlands, T. D. 48075. Plaintiff claims that these seeds are free of duty under paragraph 1669 of the same law which provides for crude drugs, or paragraph 1722, as crude vegetable sub-

stances, or dutiable at 10 or 20 per centum ad valorem under paragraph 1558 as unenumerated articles, manufactured or unmanufactured. In the brief filed on behalf of the plaintiff all claims were abandoned except that at 10 per centum ad valorem under paragraph 1558, *supra*. We therefore overrule all other claims.

For convenience of reference we set out the pertinent portion of said paragraph 764, as modified by the trade agreement as follows:

All other garden and field seeds not specially provided for, 3¢ per lb.

The paragraph in question contains a proviso in the following language:

*Provided*, That the provisions for seeds in this schedule shall include such seeds whether used for planting or for other purposes.

At the hearings held at the port of San Francisco the plaintiff produced the testimony of three witnesses in support of his claim. The first of these, a salesman connected with the importing firm, testified that he had seen red melon seeds imported by said firm, that he had eaten them; that he had seen red melon seeds in China; and that they are always the same in appearance, except some are better in quality than others, and that they always taste the same. He was shown a sample of red melon seeds and stated that they were first quality seeds. Plaintiff's attorney then stated that he had no official sample and offered in evidence the sample in regard to which the witness had testified. This was admitted in evidence over objection of government counsel. It was unidentified other than as consisting of red melon seeds.

This witness then was allowed to testify, over objection, as to the process used in preparing red melon seeds in China, as he had observed it upon one occasion "on the farm." This process as described was as follows. After the seeds are extracted from the melon they are washed and, to quote the language of the witness,

I saw them use a pan, and use some oil to mix the color, after that put it in the pan and fry them with a little oil, that makes the color look bright.

On cross-examination he gave as his reason for the belief that the seeds shown him (exhibit 1) were cooked in oil, the fact that they are shiny.

At the close of this hearing plaintiff's attorney, with permission of the court, withdrew a portion of the sample in evidence for the purpose of analysis in order to determine whether or not the seeds would germinate, and the case was continued.

At the second hearing plaintiff called as a witness a commercial chemist, with an experience extending over 30 years, who is connected with the firm to whom a portion of the sample in evidence (exhibit 1) was given for the purpose of determining its germinating qualities. This witness testified that he attempted to germinate about a hundred of the seeds, following the usual procedure of placing them between

blotters in a wet condition and maintaining them at a temperature of between 20° and 30° C., keeping them under observation 10 days. As a result of this test he found that 46 per centum germinated. From his long experience in testing seeds he stated that he did not consider 46 per centum to be a good percentage of germination.

In view of the fact that at the first hearing the sample was identified only as being "similar" to the imported merchandise, and the government attorney objected to its being received in evidence, we would be inclined to discount the weight to be given the germination test. However, at the second hearing another government attorney, in answer to a question by the judge hearing the case, conceded that the seeds tested were ones from this importation. We therefore accept that concession as a fact.

The plaintiff then produced another witness, Mr. Bruce Jang, the secretary of a firm of exporters and importers, engaged in handling Chinese food and other products, who testified that he was familiar with the products imported by said firm. When shown the sample in evidence he identified it as Chinese melon seeds, similar to those imported and sold by his firm, and stated that at and immediately prior to the effective date of the Tariff Act of 1930 similar merchandise could be used as food and was eaten like peanuts, largely by Chinese, although he had seen it used upon one occasion at a Chinese banquet at which Occidentals were present and that both Orientals and Occidentals had eaten it upon that occasion. He also stated that his whole family eats such melon seeds. The sample in evidence was described by this witness as east melon seeds, and in response to a question as to whether that is the melon called Jung Qua, he answered, "Yes, that is the one."

It was agreed that if plaintiff's two additional witnesses were called "they would in answer to the questions that were asked Bruce Jang give substantially the same answers that Bruce Jang gave both on direct and on cross-examination."

In the absence of any evidence to rebut this testimony and an entire absence of proof of use on the part of the defendant, it appears that the chief use of this commodity is as food.

In considering the issue before us we must first determine whether seeds must be capable of germinating in order to come within the purview of paragraph 764, *supra*. We think the decision in the case of *United States* v. *Albers Bros. Milling Co. et al.*, 19 C. C. P. A. (Customs) 88, T. D. 45226, so holds, although it is true that the court in effect limited its decision to the issue there presented. In the later case of *Albers Bros. Milling Co.* v. *United States*, 2 Cust. Ct. 194, C. D. 122, this court held that "If the germinating quality of this importation is not sufficient to meet the statutory definition of seeds, then it ought not to be so classified." The last-cited case involved the dutiable classification of Kaoliang seed which had been kiln-dried and

the germination test of which showed but 54 per centum. In view of the testimony of the chemist who made the test of the red melon seeds here involved, to the effect that they showed a germination of only 46 per centum, which he did not consider a sufficient percentage of germination, we conclude that this commodity now before us is not within the purview of said paragraph 764, as assessed by the collector.

Is it then dutiable as claimed by the plaintiff, as an unenumerated unmanufactured article under paragraph 1558, *supra*? The description of the process to which the commodity has been subjected, as it was given by plaintiff's witness, is as follows. The seeds are extracted from the melon and washed, some oil is used to "mix the color," after which the seeds and the oil are placed in a pan and fried with more oil. Our understanding of this testimony is that some coloring matter is used in the first instance and that thereafter the seeds, together with the oil and coloring matter, are subjected to a cooking process. It is the opinion of the court that a different article has thereby been created, because whether or not it has a new name, it certainly has a new character and use, having lost its character as a seed and acquired a new use, viz, as food. Not being specially provided for, and being manufactured in part, it would seem to fall within that provision in said paragraph 1558 which covers articles manufactured, in whole or in part, not specially provided for, at the rate of 20 per centum ad valorem. Although plaintiff made that claim in his pleadings he abandoned it in his brief.

For the foregoing reasons we overrule plaintiff's claim without affirming the finding of the collector.

Judgment will be rendered accordingly. It is so ordered.