(C. D. 1398)

WILBUR-ELLIS COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 13, 1952)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Walter I. Carpeneti* of counsel) for the plantiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Ekwall, Judge: This is a protest, arising at the port of Los Angeles, against the collector's assessment of duty on milo maize at the rate of 1 cent per pound under paragraph 763 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as "forage crop seeds not specially provided for." It is claimed that the merchandise is entitled to free entry under paragraph 1722 as a crude vegetable substance or is dutiable at 10 per centum ad valorem under paragraph 1558 as a nonenumerated unmanufactured article.

The pertinent provisions of the tariff act are as follows:

Par. 763 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. Grass seeds and other forage crop seeds: * * * Grass and forage crop seeds not specially provided for, 1¢ per lb.

Par. 764. Other garden and field seeds: * * * *Provided*, That the provisions for seeds in this schedule shall include such seeds whether used for planting or for other purposes.

Par. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for. [Free.]

Par. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, * * *.

Two entries are involved in this importation. Entry No. D. E. 3483 covers merchandise described in the consular invoice as "Milo Maize (Feed)" imported from Mexico on or about January 26, 1948, in railroad car No. R. D. G. 10707. It was entered as milo maize for feeding purposes. Entry No. D. E. 3192 covers merchandise described in the commercial invoice as "Maiz Milo" imported from Mexico on or about January 12, 1948, in railroad car No. N. P. 27489. It was entered as "Maize Corn" for feeding purposes only.

At the trial John W. Custer, chief chemist of the United States Customs Laboratory at Los Angeles, testified that he received a sample representing the merchandise in entry No. D. E. 3192; that the sample consisted of milo maize; that it was submitted for the determination of the germinating quality of the seed; that milo maize is also known as sorghum. The chemist's report of his analysis of the sample was received in evidence as defendant's exhibit 1. The witness identified a bottle of seeds, labeled entry No. D. E. 3192, as the remaining portion of the sample analyzed by him and stated that except that it may have been cleaned it was in the same condition as when he received it. The sample was received in evidence as defendant's exhibit 1–A.

The chemist's report (defendant's exhibit 1) states:

The sample is milo, a grain or grass sorghum.

| | |
|---|---|
| Germination test on screened sample | 90% |
| Screenings | 20% |

Eleanor Silverness, an employee of Wilbur-Ellis Company, testified that her company purchased the merchandise involved herein; that the shipment contained in car R. D. G. 10707 was sold to Fontana Producers Egg & Supply Co.; that the shipment contained in car N. P. 27489 was sold partly to Fontana Producers Egg & Supply Co. and partly to Pierce Feed Co.

Maurice W. Farr, assistant manager, plant superintendent of Fontana Producers Egg & Supply Co., testified that car R. D. G. 10707 contained kaffir, one of the sorghum family; that the portion of the merchandise in car N. P. 27489 purchased by his firm contained the same kind of material; that said material is known as sorghum grain, kaffir, milo maize, or hegari; that it is used for feeding purposes; that the portion of the within merchandise purchased by his company was ground after importation and used for feeding purposes; that the main use of hegari or kaffir corn is as feed for animals.

William Jack Pierce, owner and operator of Pierce Feed Co., testified that he was familiar with the merchandise purchased by his company from Wilbur-Ellis Company; that it was used for feed; that it was probably cleaned and then ground and mixed with poultry feeds; that the principal use of hegari is for feed for livestock, mostly poultry and cattle; that it could be classed as a forage crop; that it is grown for animal feed.

Plaintiff claims that since the importer had complied with the regulations issued by the Federal Seed Act (which fact was conceded by the defendant) and since the merchandise was used for feeding purposes, it is not properly dutiable as a seed.

The Federal Seed Act prohibits the importation of any seed which is unfit for seeding purposes (7 U. S. C. sec. 1581) and includes within the definition of such seed the following (sec. 1584):

(c) If any such seed contains less than 75 per centum of pure, live seed, or if any component of such seed present to the extent of 10 per centum or more contains less than 75 per centum of live seed: *Provided*, That when the Secretary of Agriculture shall find that any such seed or any kind of seed present to the extent of 10 per centum or more cannot be produced to contain 75 per centum of pure, live seed, he may set up such standard from time to time for pure, live seed as he finds can be produced.

Section 1582 (c) (2) provides that the provisions of the act do not apply—

(2) when the Secretary of Agriculture finds that a substantial proportion of the importations of any kind of seed is used for other than seeding purposes, and he provides by rules and regulations that seed of such kind not imported for seeding purposes shall be exempted from the provisions of the chapter: *Provided*, That importations of such kinds of seed shall be accompanied by a declaration setting forth the use for which imported when and as required under joint rules and regulations prescribed under section 1592 of this title.

Joint regulations have been issued by the Secretary of the Treasury and the Secretary of Agriculture for the enforcement of the Federal Seed Act. (Code of Federal Regulations, Cum. Supp., title 7, sec. 201.1–201.231, amended by 1945 Supp., title 7, sec. 201.2–201.230, in effect at the time of entry of the instant merchandise.) Section 201.222 of these regulations provides that entries covering importations of certain seeds, including sorghum, "shall contain a statement by the importer setting forth the use for which imported. When imported for seeding purposes such seed is subject to the import provisions of the Act."

In other words, seed which does not conform to the standard set up by the Federal Seed Act may not be imported for seeding purposes, but certain kinds of seeds which the Secretary of Agriculture finds are imported in substantial quantities for other than seeding purposes may, nevertheless, be imported whether or not they measure up to the standard, provided certain regulations are complied with. However, the exception *per se* does not determine that a particular shipment of seed is or is not pure, live seed. In fact, it makes such a determination unnecessary as far as the requirements of the Federal Seed Act are concerned.

Plaintiff relies upon *United States* v. *Enrique C. Lineiro*, 37 C. C. P. A. 5, C. A. D. 410. In that case, which also involved milo maize imported from Mexico, the regulations issued under the Federal Seed Act were not complied with. After setting forth that fact, the court said (p. 9):

The trial court was of opinion that compliance or noncompliance with the regulation was not determinative of the question involved, stating that in its opinion if the imported merchandise contained 75 per centum or more of pure, live seed, as provided in the Federal Seed Act, it was dutiable as seed, because it would then be fit for use as seed.

The trial court had held that the merchandise was not dutiable as seed, because, while the official tests showed a percentage of pure, live seed of a little more than 75 per centum, there was evidence that the bulk of the merchandise contained more cracked and shrivelled grain than the official samples. The Court of Customs and Patent Appeals reversed on the ground that there was nothing in the record to establish that the merchandise contained less than 75 per centum of pure, live seed. There is no indication that the court would have reached a different conclusion, had the regulations been complied with.

The issue is narrowed, therefore, to whether or not the imported merchandise is "seed" within the meaning of the tariff act. Paragraph 764 includes a proviso that "the provisions for seeds in this schedule shall include such seeds whether used for planting or for

other purposes." Since the proviso refers to "this schedule," it applies to both paragraph 763 and paragraph 764. See *United States* v. *Albers Bros. Milling Co. and Geo. S. Bush & Co.*, 19 C. C. P. A. 88, T. D. 45226. Therefore, the fact that the merchandise herein was imported and used for feed for livestock and poultry is immaterial.

The determining factor in tariff cases involving seeds has been held to be the germinating capacity of the imported merchandise. In *United States* v. *Albers Bros. Milling Co. and Geo. S. Bush & Co.*, *supra*, it was held that kaoliang or millet seed which had lost its germinating qualities by a kiln-drying process was removed from the category of garden or field seeds under paragraph 762 of the Tariff Act of 1922 or millet or grass seeds under paragraph 761.

In *I. L. Radwaner Seed Co., Inc.* v. *United States*, 71 Treas. Dec. 976, T. D. 49036, it was held that roasted pumpkin seeds sold for human consumption were dutiable as pumpkin seeds under paragraph 762 of the Tariff Act of 1922. In that case, it was shown that 54 or 57 per centum of the imported seed germinated and that the germination capacity of seeds sold for planting was from 58.6 to 73.4 per centum. The court said (p. 979):

It is not necessary for us to undertake to establish a percentage of germination beyond which ordinary seeds cease to be seeds. It is clear that the germinating capacity of the seeds involved herein is not far below that shown by tests made of seeds offered in the market for planting.

In *Albers Bros. Milling Co.* v. *United States*, 2 Cust. Ct. 194, C. D. 122, it was held that kaoliang seed which when tested showed but 54 per centum germination was not dutiable as seed. The court said (p. 195):

\* \* \* It is our opinion that Congress intended to levy duty under paragraph 763 of the Tariff Act of 1930 only on such "other grass and forage crop seeds not specially provided for" as would meet the qualifications for seeds on importation and sale as established by the Federal Government. That must be so since, as the court stated in the case of *United States* v. *Albers Bros. Milling Co. et al.* in 19 C. C. P. A. (Customs) 88, T. D. 45226,

\* \* \* the seeds provided for in these paragraphs, as far as affects the issue herein involved, are only to be regarded as seeds if they still retain their germinating qualities.

See to the same effect, *Song Kee & Co.* v. *United States*, 7 Cust. Ct. 111, C. D. 548.

The recent case of *United States* v. *Enrique C. Lineiro*, *supra*, held that the merchandise was dutiable as seed since there was nothing to show that it consisted of less than 75 per centum of pure, live seed, although it was used for poultry feed.

The cases cited by plaintiff are not to the contrary. In *United States* v. *Herbst Brothers*, 24 C. C. P. A. 270, T. D. 48688, whole

mustard seeds were held dutiable under the provision for "mustard seeds (whole)" rather than under the provision for "all other garden and field seeds not specially provided for." There, the competing provisions both related to seeds and that covering "mustard seeds (whole)" was held more specific. The instant case does not involve an *eo nomine* provision for milo maize and only one of the competing provisions relates to seeds.

*Sheldon & Co.* v. *United States*, 12 Ct. Cust. Appls. 474, T. D. 40671, involved St. John's bread assessed with duty under paragraph 749 of the Tariff Act of 1922 as fruit. It was held properly classifiable under paragraph 1459 as a nonenumerated unmanufactured article. In the course of the decision, the court referred to five previous tariff acts which contained *eo nomine* provisions for St. John's bread in paragraphs generally relating to seeds of various kinds. No claim was made under the seed paragraphs of the Tariff Act of 1922; therefore, it cannot be inferred, as plaintiff claims, that the court was of the opinion that the use of the commodity removed it from the category of a seed. There is no discussion as to whether it was or was not a seed.

The other cases cited by plaintiff involve prior tariff acts which did not contain a proviso similar to the one in paragraph 764 of the Tariff Act of 1930.

In the instant case, a sample of the merchandise in entry No. D. E. 3192 was tested by John W. Custer, chief chemist of the United States Customs Laboratories in Los Angeles, and found to have a germinating capacity of 90 per centum (defendant's exhibit 1). There is no evidence as to the germinating capacity of the merchandise involved in entry No. D. E. 3483. However, since the collector assessed duty on the merchandise under paragraph 763 as "seed," it is presumed that he found all the facts necessary to bring it within that classification. *United States* v. *I. Magnin & Co., Inc.*, 21 C. C. P. A. 77, T. D. 46394; *United States* v. *Marshall Field & Co.*, 17 C. C. P. A. 1, T. D. 43309; *United States* v. *Albers Bros. Milling Co.*, 35 C. C. P. A. 119, C. A. D. 380. As there is nothing in the record establishing or tending to establish that the merchandise contained less than 75 per centum of pure, live seed, it is classifiable as seed. *United States* v. *Enrique C. Lineiro, supra.*

On the record herein, we hold that the merchandise is properly dutiable at 1 cent per pound under paragraph 763 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as "forage crop seeds not specially provided for." The protest is overruled and judgment will be rendered accordingly.