(C. D. 1576)

KEER MAURER COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 13, 1954)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*Harold L. Grossman,* special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This is a protest against the collector's assessment of duty on dyed horsehair at 20 per centum ad valorem under

paragraph 1558 of the Tariff Act of 1930 as an unenumerated manufactured article. It is claimed to be free of duty under paragraph 1688, as horsehair, cleaned, drawn, but unmanufactured.

The pertinent provisions of the tariff act are as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1688. Hair of horse, cattle, and other animals, cleaned or uncleaned, drawn or undrawn, but unmanufactured, not specially provided for. [Free.]

Two entries are involved herein. Entry No. 05977 covers 91 cases and entry No. 05978 covers 75 cases of drawn horse mane hair imported from Brazil on or about May 27, 1951. Eight cases out of the first entry and six cases out of the second entry contained dyed horsehair, assessed with duty as stated, and the balance contained black, gray, or bleached horsehair, which was permitted free entry under paragraph 1688. Only the dyed hair is before us in this case.

At the trial, Harry L. Zeitlin, a partner of Samuel Zeitlin's Sons, importer of the instant merchandise, testified that his firm imports horsehair and bristles to sell to brush manufacturers, weavers, and other trades, and processes a small part of such goods before sale. The witness stated that he has been a partner since 1932, is familiar with the present importations, and has seen such merchandise produced in Brazil. He described the process as follows: Hair is purchased in the interior of the country in a raw state, mixed as to mane and tail hair and as to colors and qualities. After it is brought to the plant, it is sorted into colors and qualities and washed in hot water to take the dirt out. To produce merchandise such as that involved herein, hair is placed in a tub containing dye and acid to make it black. After drying, it is drawn or hackled into sizes, running from 4 inches to 40 inches, and is bundled and packed for shipment.

The official samples of the merchandise were received in evidence as plaintiff's collective exhibit 1. They consist of bundles of black hair, approximately 7½ inches long. Some hairs in each bundle are not black, but are of a lighter color.

Mr. Zeitlin testified that he had not ordered any dyed hair because it is more difficult to sell to brush manufacturers and weavers of cloth. He stated that he was familiar with the types and kinds of hair used by his customers and explained that weavers object to dyed hair because the dye will come off on the cloth after it is woven and put through a steaming operation. Dyed hair is also objected to by the paintbrush trade because the dye may come off and spoil the paint. The witness stated that while this hair is of the same quality as the undyed, it is not commercially suited for the same uses and is neither

advanced in value nor improved in condition by dyeing. It could not be sold to the same people who normally purchase such hair, undyed.

On cross-examination, Mr. Zeitlin testified that this merchandise is used in the manufacture of cheap brushes, which, in their finished condition, are black, gray, white, or light gray, the greater percentage being black. It is not used in paintbrushes but in floor-sweeps and has to go into a product that does not come in contact with water or heat.

The witness did not know the purpose of dyeing the hair and stated that as soon as he received word that such hair was being shipped, he instructed the producer not to do it.

The question at issue here is whether dyed horsehair may be classified under the provision in paragraph 1688 for hair of horse, unmanufactured, or whether it has been so processed as to become a manufactured article, dutiable under paragraph 1558.

That issue was before the Board of General Appraisers as long ago as 1892 in *William Wilkens & Co.* v. *United States*, T. D. 13218, G. A. 1639. There, the merchandise was horsehair, dyed black, which the importer claimed to be of no more value than the remainder of the shipment, which was horsehair, cleaned, but not dyed. The board held that dyeing constituted a process of manufacture and that the imported merchandise was neither horsehair, unmanufactured, nor a manufacture of hair, but was an article manufactured in whole or in part, not specially provided for. The board said:

The Board, in G. A. 1252, decided that dyeing constituted a process of manufacture. In the cotton schedule, cotton cloth that is dyed is made to pay a greater rate of duty than cotton cloth which has undergone no further process of manufacture than fabrication. Paragraph 443 imposes a greater rate of duty upon feathers, colored (dyed), than upon feathers, crude. These two examples furnish so convincing a proof of the intent of Congress to make dyeing a process of manufacture that the Board feels constrained to adhere to its previous ruling.

Then again, hair curled suitable for beds or mattresses is removed from the free list and made dutiable under paragraph 450, N. T. The process of curling hair does not constitute a greater process of manufacture than dyeing hair. This is to some extent a legislative interpretation of the meaning of the term hair of horses, cattle, and other animals, cleaned but unmanufactured.

Three-fourths of the merchandise named in the invoices covered by these protests is horsehair, not dyed, and was admitted to free entry by the collector under paragraph 604. It will thus be seen that there is a class of imported merchandise falling within the terms of this paragraph.

This decision was cited recently in *National Carloading Corp.* v. *United States*, 22 Cust. Ct. 328, Abstract 53220, wherein the court held that sisal fiber waste was excluded from free entry as sisal, not dressed or manufactured in any manner, because some of the pieces had been dyed.

Since the decision in the *Wilkens* case was handed down, the Tariff Acts of 1894, 1897, 1909, 1913, 1922, and 1930 have been enacted without any change being made in the provision for horsehair. Under such circumstances, the doctrine of legislative ratification of judicial construction is controlling unless there are very compelling reasons for holding otherwise. *August Bentkamp* v. *United States*, 40 C. C. P. A. (Customs) 70, C. A. D. 500; *Werner G. Smith Co., Div. Archer Daniels Midland Co.* v. *United States*, 40 C. C. P. A. (Customs) 90, C. A. D. 503. In the latter case, the court said (p. 97):

The case of a single reenactment subsequent to a decision of the Customs Court is to be distinguished from that wherein subsequent to such a decision Congress has reenacted the construed provision in a series of three or four successive acts. In the latter situation, the doctrine of legislative ratification of judicial construction is controlling in the absence of very compelling reasons to the contrary. The reason for this is that Congress is presumably cognizant of such judicial construction and its consequences, and to hold otherwise in the face of such a series of reenactments would be attributing to that body an unusual indifference or lack of knowledge. That is an attitude to be avoided.

Plaintiff has called to our attention two cases in which certain dyed hair was held entitled to free entry as unmanufactured hair. *Knauth, Nachod & Kühne* v. *United States*, 16 Treas. Dec. 22, T. D. 29145, and *Wells, Fargo & Co.* v. *United States*, 34 Treas. Dec. 695, Abstract 42123. Both of these cases involved hair from animal skins which had been dyed. The dyeing process had been applied to the skins and the hair was necessarily dyed, too, but no dyeing process had been applied to the hair *per se*. Therefore, it was properly held that the *hair* had not been manufactured.

In the instant case, however, it is the hair itself which has been dyed.

Certain other cases cited by plaintiff treated the term "manufactured" as synonymous with the term "manufacture of." *G. W. Sheldon & Co.* v. *United States*, T. D. 16970, G. A. 3398; *Globe Novelty Company* v. *United States*, 6 Treas. Dec. 379, T. D. 24394; *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963. These terms have since been distinguished, the difference being that a material, manufactured, is one which has been subjected to a manufacturing process but has retained its identity and character as such material, while a manufacture of a material implies the creation of a new article with a new name, character, or use. *United States* v. *Nippon Co.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303.

It is not claimed in the instant case that the merchandise is a manufacture of horsehair, but that it is horsehair, manufactured.

Plaintiff contends, however, that it is not classifiable as horsehair, manufactured, on the ground that dyeing it reduced its value and made it commercially less desirable. Why the merchandise was dyed

or what its color was originally does not appear in the record. Dyeing was, nevertheless, a distinct and deliberate step in its production. It is obvious that the producer would not have subjected it to the process, had he not felt it advantageous to do so. It may well be that the merchandise was of such a nondescript color, faded, or bleached that he could not have sold it for the same price as hair with a good natural color and that he dyed it to produce a salable article. According to the official papers, the entire quantity of each shipment, dyed and undyed, was purchased at the same price per pound. Dyeing may have enhanced the value of this particular merchandise, even though dyed hair may be less desirable for certain purposes than undyed hair.

In our view, neither the record presented nor the decisions cited furnish a compelling reason for finding that the doctrine of legislative ratification of judicial construction is not controlling in the instant case.

We hold, therefore, that the merchandise herein is properly dutiable as classified by the collector at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as an unenumerated manufactured article.

The protest is overruled, and judgment will be rendered for the defendant.