(C. D. 2047)

ATLAS CANNING COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 26, 1958)

*Jeremiah B. Bloom* (*Bernard M. Bloom* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

DONLON, Judge:   The merchandise in issue is horse meat that was imported from Canada.  It was classified in liquidation as meat, fresh, chilled, or frozen, not specially provided for, under paragraph 706 of the Tariff Act of 1930, with duty at the rate of 3 cents per pound under the modification of paragraph 706, effected by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739.

Plaintiff's protest claims that this horse meat is not meat in the tariff sense which Congress intended in paragraph 706, and that classification should be under paragraph 1558 as a nonenumerated article, either unmanufactured or manufactured.  The rates under modified paragraph 1558 are, if the merchandise is unmanufactured, 5 per centum ad valorem (General Agreement on Tariffs and Trade, T. D. 51802), or, if manufactured, 10 per centum ad valorem (Torquay protocol to the general agreement, T. D. 52739).

A third claim by plaintiff is that this is dog food, manufactured, unfit for consumption, not specially provided for, and, hence, dutiable at 10 per centum ad valorem under the trade agreement with Argentina modification of paragraph 1558, T. D. 50504.  This claim was not pressed by plaintiff, although it has not been formally abandoned.

As imported, the natural horse meat had been "decharacterized." This process consists of cutting deep slashes, almost but not quite through the horse meat, at intervals of about 1½ to 2 inches, and treating these cuts with charcoal, which penetrates the horse meat and causes it to change color from red to black. It is of record that this decharacterization renders the horse meat, if not inedible, certainly both unappetizing as food and readily distinguishable from meats that are commonly eaten as food by people in the United States. This decharacterized horse meat is used in the United States for the manufacture of dog food. As imported, the decharacterized horse meat had been cut into chunks, with bones removed, and the chunks weighed 12 or 12½ pounds each.

Plaintiff's brief fails to cite any precedents. Defendant's brief cites no cases in support of its argument that this horse meat is meat in the tariff sense, under paragraph 706, merely arguing that *it is* an enumerated article provided for under paragraph 706. Defendant cites two cases in support of its further argument, that what is enumerated and provided for elsewhere does not fall within the catchall provision of paragraph 1558. Neither brief is helpful to the court on the basic issue argued by both parties, which is whether or not this "decharacterized" horse meat is meat within the purview of paragraph 706.

Whether research of counsel has failed to uncover prior litigation construing the congressional intent with respect to the word "meat" in paragraph 706, we do not know. There are such cases.

In *W. F. Mackay Estate* v. *United States*, 28 Cust. Ct. 73, C. D. 1391, the issue was whether frozen beef lungs used in the United States almost exclusively in the manufacture of dog and cat food, but which have a minor use as food for human consumption, are to be considered "meat" in the tariff sense. Reference is made to the *Mackay* opinion for a discussion of precedents. These citations need not be repeated here. On the basis of the discussed cases, the court, in the *Mackay* case, said:

> From these authorities it appears that the term "meat" as used in the tariff acts includes such portions of the animal as are habitually eaten as food, which are of every day consumption and which are ordinarily known as, and accepted as, a meat of commerce.
>
> \*      \*      \*      \*      \*      \*      \*
>
> This court is of opinion that it was not the intention of Congress to include within the term "meat" any article used almost exclusively in the manufacture of dog and cat food even though a small portion is used for human consumption. (P. 83.)

After the *Mackay* decision, which was not appealed, the Government caused the same issue to be tried again. *A. N. Deringer, Inc.*,

*et al.* v. *United States*, 32 Cust. Ct. 41, C. D. 1578. The merchandise in the *Deringer* case, as in the *Mackay* case, was frozen beef lungs, chiefly used to make dog and cat food. Defendant, on the trial, brought out the fact that the chief use of *fresh* beef lungs is for human consumption and, on that record, argued that there is no tariff difference between fresh and frozen beef lungs. The court said, at page 54:

* * * we find that the percentage of beef lungs used for human consumption in this country is a minor one, and there is no evidence before the court to establish that *frozen* beef lungs are used for human consumption. Therefore, in accordance with the authorities cited in *W. F. Mackay Estate* v. *United States, supra,* we hold that the imported merchandise, frozen beef lungs, melts, and spleens, was not properly classified by the collector as "meat." [Italics quoted.]

There is no evidence before us that decharacterized horse meat is "habitually eaten as food" or is "ordinarily known as, and accepted as, a meat of commerce." To the contrary, the evidence is that decharacterization makes it unfitted for human consumption and that decharacterized horse meat is used to manufacture dog food. On this record, and the authority of the *Mackay* and *Deringer* cases, *supra,* we hold that decharacterized horse meat is not such meat as Congress intended to provide for in paragraph 706.

There is no evidence of record, and indeed there has been no argument, that would bring this merchandise under any other enumeration. Hence, it is an unenumerated article and dutiable as such under one of the provisions in paragraph 1558.

This horse meat has been boned, cut into chunks approximately uniform in size, and has been "decharacterized" by slashing the chunks uniformly and inserting charcoal into the horse meat. The product of all these processes is not horse meat in its raw or natural state. The several operations have made it into a new article of commerce, and of a different character.

It is not necessary here to consider whether the processes to which the natural horse meat has been subjected would or would not take it out of some *eo nomine* provision, for we have held that this article is not enumerated in the tariff act. Our consideration is whether, being unenumerated and, hence, dutiable under paragraph 1558, it is raw or unmanufactured, or manufactured, in whole or in part.

The precedents most useful are those cases in which the competition in classification was between the raw or unmanufactured and the manufactured categories of paragraph 1558. Such a case was *Werner G. Smith Co. et al.* v. *United States*, 40 C. C. P. A. (Customs) 90, C. A. D. 503. Writing for the court, Judge Johnson stated the issue succinctly, at page 99, as follows:

\* \* \* The sole basis of distinction between the 10% and 20% duty rates in that paragraph depends on whether the import is unmanufactured, or manufactured, in whole or in part. Thus, it seems clear to us that there is no alternative but to regard the process of producing the imported merchandise as a, if not the, decisive factor in determining which of the two rates is applicable.

Relying on cited precedents, our appeals court held that the article of the *Smith* case, tall oil, was "produced by a manufacturing process comprising the chemical conversion of the fatty acid soaps in the skimmings by acidulating them" and, hence, the tall oil was an un-enumerated *manufactured* article within the purview of paragraph 1558, whether or not its ingredients were only those that occur naturally in the pine tree from which the oil is derived. *Werner G. Smith Co. et al.* v. *United States, supra,* page 99.

Whether the charcoal process effected chemical changes in the natural horse meat, the record does not show, nor is it necessary for us to decide that issue. What had been "raw or unmanufactured" was made into something different, for importation as that different (or decharacterized) article, to be further processed here into dog food. It is not "raw or unmanufactured." It is "manufactured," in part at least, within the meaning of paragraph 1558.

There is no evidence that this decharacterized horse meat is dog food, manufactured. The evidence is that it was imported for use in the manufacture of dog food. The protest claim under the trade agreement with Argentina (T. D. 50504) is overruled.

The protest claim for classification as an unenumerated manufactured article under paragraph 1558, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, is sustained. All other protest claims are overruled.

Judgment will enter accordingly.