74

ROBERT G. LYNCH CO. *v.* UNITED STATES    (No. 5090)*

United States Court of Customs and Patent Appeals, April 11, 1962

*Sharretts, Paley & Carter, Joseph F. Donohue,* for appellant.
*William H. Orrick, Jr.,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section, for the United States.

[Oral argument February 8, 1962, by Mr. Donohue and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge, delivered the opinion of the court:

Appellant imported raw sugar to which a green coloring matter had been added. ▇▇▇ The collector classified the imported merchandise as sugar under paragraph 501 of the Tariff Act of 1930, and assessed duty thereon accordingly. He also assessed the internal revenue tax on the merchandise as required by 26 U.S.C. 4501(b). The Customs Court overruled the importer's protest and sustained the collector's classification (C.D. 2272).

Appellant claims that the merchandise is not sugar within the meaning of paragraph 501 of the Tariff Act and asserts that by reason of the similitude provision in paragraph 1559 of the Tariff Act, as amended, the merchandise should be classified under paragraph 502 as molasses not to be used for human consumption. Appellant also claims that since the merchandise should have been classified by simili-

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 94(d), Title 28, United States Code.

*(C.A.D. 799)

tude as molasses, the internal revenue tax, imposed on sugar pursuant to 26 U.S.C. 4501(b), was improperly assessed.

The pertinent provisions of the statutes here in issue, as amended and modified by presidential proclamations pursuant to trade agreements, are as follows:

Tariff Act of 1930
19 U.S.C. 1001

Par. 501   Sugars * * * testing by the polariscope not over 75 sugar degrees, * * * _____ 0.428125¢ per lb.
    and for each additional sugar degree shown by the polariscopic test _____ 0.009375¢ per lb. additional and fractions of a degree in proportion.

Par. 502   Molasses and sugar sirups, not specially provided for, * * *
    Molasses not imported to be commercially used for the extraction of sugar or for human consumption, * * * __ 0.012¢ per lb. of total sugars.

Par. 1559(a)   Each and every imported article, not enumerated in this chapter, which is similar in the use to which it may be applied to any article enumerated in this chapter as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Revenue Act of 1954
26 U.S.C. 4501(b)

    In addition to any other tax or duty imposed by law, there is hereby imposed, under such regulations as the Secretary or his delegate shall prescribe, a tax upon articles imported or brought into the United States as follows:

(1)   On all manufactured sugar testing by the polariscope 92 sugar degrees, 0.465¢ per lb. and, for each additional sugar degree shown by the polariscopic test, 0.00875¢ per lb. additional, and fractions of a degree in proportion.

    *        *        *        *        *        *        *

26 U.S.C. 4502(3)

    Manufactured sugar.—The term "manufactured sugar" means any sugar derived from sugar beets or sugarcane, which is not to be, and which shall not be, further refined or otherwise improved in quality; except sugar in liquid form which contains nonsugar solids (excluding any foreign substance that may have been added or developed in the product) equal to more than 6 per centum of the total soluble solids and except also sirup of cane juice produced from sugarcane grown in continental United States. The grades or types of sugar within the meaning of this definition shall include, but shall not be limited to, granulated sugar, lump sugar, cube sugar, powdered sugar, sugar in the form of blocks, cones, or molded shapes,

confectioners' sugar, washed sugar, centrifugal sugar, clarified sugar, turbinado sugar, plantation white sugar, muscovado sugar, refiners' soft sugar, invert sugar mush, raw sugar, sirups, molasses, and sugar mixtures.

The first issue is whether the imported merchandise is one of the "sugars" described and provided for in paragraph 501 as the Government's classification necessarily implies, or whether, by virtue of its coloration, it is limited to exclusive use as an ingredient in animal feeds, and as such is removed from classification under paragraph 501. This requires a review of appellant's contention that paragraph 501 is limited to raw and refined sugars and that raw sugars are those capable of being transmuted to refined sugars.

The second issue, the propriety of the assessment under the Internal Revenue Code, rests on appellant's position that the imported material is not any of the types or grades of sugar described therein.

Essentially, the issues presented on this appeal turn upon whether *as a matter of fact*, the dyeing and treatment of the sugar remove it from the category of raw sugar.

The reason for the importation of raw sugar colored green is indicated by the following excerpt from the record.

Q. Well, will you tell the Court rather fully, please, how you became familiar with it? A. Well, in late 1954 I had a man named Hathorne come into my office and acquaint me with the desirability of producing a sugar product for livestock feed, and he explained to me that the product would have great commercial value because it would have acceptance among the livestock feed manufacturers, and it would also have acceptance among the sugar producers in Latin America. But he said the problem was to have the duty reduced, as different from human consumption sugar, so that the feed would be at a price that would be commensurate with feed manufacturers putting it in as an ingredient.

He had applied to the Treasury Department, Bureau of the Customs, probably a year before that, to get a ruling on this particular thing, and had submitted a sample. He was denied the acceptance by the Bureau of Customs, and I then went to the Bureau of Customs, at the time he mentioned it to me, to check on the regulations, because this appealed to me as something that would have great business potential.

When I went down to the Customs Department and discussed the case with a man, whose name I think I recall as Camfield or Canfield, he indicated to me that within a month or two—that they had now had a different ruling at Customs, or they had a new clause known as the similitude clause, and he said "this, I think, might embrace what you want to do by putting your feed sugar into Paragraph 502."

So from there on we had many negotiations with Cuba, attempting to get Cuba to produce a sugar feed that would be colored green, and so adulterated; and Cuba, although very much interested in trying to have such a produce to get into the livestock feed market in the United States, were unwilling to manufacture the sugar.

So then we started negotiations with the Dominican Republic, who agreed to manufacture the sugar that you now have a sample of on your desk, this green, sweet green livestock sugar.

The sole question presented for decision here is whether the imported merchandise, green colored raw sugar, was properly classified. In deciding this question, the reasons of the importer as above set forth for so coloring the raw sugar are immaterial. *Merritt* v. *Welsh*, 104 U.S. 694. In *Corporacion Argentina de Productores de Carnes* v. *United States*, 32 CCPA 175, C.A.D. 304, this court stated:

Certainly an importer, in the absence of subterfuge or deceit, has the right to so fashion his merchandise that he may obtain a lower rate of duty than if not so fashioned.

There is no issue here of "subterfuge or deceit."

The Customs Court in commenting on the nature of the imported "Sweet Green Livestock Feed Sugar" said:

Further, it has not been shown that the involved merchandise is a raw sugar which has been processed to such a degree that it no longer can be used for a large portion of its original potential uses. It is admitted that it is a raw sugar, dyed green. There is no showing that the green dye on the crystals cannot be washed off and the crystals made white again and further refined by clarifying, discoloring, and recrystallizing. Even assuming that the dye cannot be washed off, it is admitted that the sugar is edible in its present form (R. 50), and it has not been established that the public would refuse to buy refined green sugar for human consumption. It presently buys much less attractive brown sugar for human consumption. While the largest use of sugar is for sweetening or otherwise conditioning foods in the household and in the food industries, it also is used for nonfood industrial purposes, 13 Encyclopedia of Chemical Technology 224.

Plaintiff's Collective Exhibit 2 is a deposition of its witness Redman who described how the imported material was made as follows:

[The] Product in reference [is] made from sugar cane juices with use of normal raw sugar manufacturing methods up to the point of discharge from the vacuum pan to the crystallizer. The separation of the mother liquor from the sugar crystal was carried out in the usual centrifugal machine, but at this point the process of manufacture differed slightly, in that in addition to the use of wash water the sugar in the centrifugal was steamed also and, a dye added. This resulted in the necessity of cooling the sugar as it was discharged and, this was done by tumbling the sugar over a rotating screen.

The report of the U.S. Customs Laboratory, which was received in evidence, reads as follows:

Chemical and spectrophotometric examination shows that the sample consists of colored sugar crystals and has a polariscopic test of 99.7 sugar degrees.

It contains approximately 16 parts per million of a dye similar to Brilliant Blue FCF. We find no evidence of any other added material. It also contains some natural coloring matter having the characteristics of that found in turbinado sugar. This does not rule out the presence of some refined sugar.

In answer to interrogatory No. 6, the witness Redman stated:

Nothing was done, other than mentioned above which would change its classification as a raw sugar.

Other factual testimony which was relied upon by the Customs Court was summarized in its opinion as follows:

Mr. Lynch, former president of the importer company, described the merchandise as "sugar * * * sweet green livestock sugar" (R. 11–12) and "a raw sugar that was freeflowing and colored green." (R. 88).

The court inquired of Mr. Lynch: "So the principal distinguishing feature is that a dye has been added," and Mr. Lynch replied, "That is right. It is *a raw sugar with green dye.*" [Italics added.] (R. 45.) Mr. Lynch admitted that the dyestuff as certified by the Food and Drug Administration was suitable for use in foodstuffs edible for human consumption (R. 50), but stated that the presence of the dye would make the merchandise a product *unacceptable to him personally* as a product commercially suitable for being refined into refined sugar.

Another witness for plaintiff, Mr. Roland C. Quinn, vice president of the Pierce Grain Corp. of Buffalo, N.Y., which manufactures animal and poultry feeds, testified that there was no difference between raw sugar and the involved merchandise, except in color (R. 71). Mr. Crowe, also a witness for the plaintiff and general manager of Keiser & Co., Inc., sugar broker, testified to the same effect (R. 107–108). Raw sugar is generally amber in color, while the merchandise in question is green. Mr. Quinn stated, on cross-examination, that both are raw sugar in commerce.

We are reluctant to disturb the fact findings of the Customs Court unless there is a persuasive showing of error. *United States* v. *Riebe*, 1 Ct. Cust. Appls. 19, T.D. 30776; *United States, (Bellhouse Louver Windows, Party in Interest)* v. *Pittsburgh Plate Glass Co.*, 44 CCPA 110, C.A.D. 646.

The burden of proof is on appellant to establish such a showing of error. We find this burden of proof has not been sustained here. There is ample evidence of record to support the findings made by the Customs Court.

Appellant places reliance on four cases from which it is contended that the term "sugar" in par. 501 of the Tariff Act of 1930 as amended, "has been judically limited to raw and refined sugars." These cases are:

*Savannah Sugar Refining Corp.* v. *United States*, 20 CCPA 272, T.D. 46061,

*United States Cane Sugar Refiners Assn.* v. *McNutt*, 138 F. 2d 116,

*United States* v. *Olavarria & Co. Inc.*, 37 CCPA 40, C.A.D. 417, and

*Balfour Guthrie & Co.* v. *United States*, 14 Ct. Cust. Appls. 78, T.D. 41582.

While we may not fully agree with appellant's analysis of these cases, we do agree with appellant's statement in its brief that "Raw sugars are those *capable* of being transmuted by further processing to refined sugars" [emphasis added] and that, "Refined sugars are those sold for human consumption." We do not agree, however, with appellant's statement that "The material at bar is neither." The record seems to us to demonstrate conclusively that the imported material

is a green colored raw sugar. There is no proof that such material is incapable of further processing into refined sugar, nor is there any showing that it is in fact unfit for human consumption.

Appellant's counsel at oral argument referred to the case of *Atlas Canning Company, Inc.* v. *United States*, 41 Cust. Ct. 242, C.D. 2047, as authority for the proposition that the imported merchandise here, like the charcoal-treated horsemeat in the *Atlas* case, had lost its original identity and thus constituted a new article in the tariff sense. It appears from a study of the *Atlas* case that the record there established factually to the satisfaction of the court that the imported "decharacterized" horsemeat was no longer "meat" as that term was used in section 706 of the Tariff Act of 1930. As distinguished from the situation in the *Atlas* case, the Customs Court on the present record referred, we think properly, to the fact that the imported merchandise was characterized by the witnesses as "raw sugar, dyed green." Fundamentally, this issue is one of fact and we have found no reason to disturb the finding of the Customs Court thereon. The imported merchandise in issue here is "raw sugar, dyed green." It was not shown on the present record to be a "decharacterized" sugar.

Paragraph 501 provides for "sugars" without words of limitation. It seems to us that to sustain appellant's position it would require us to qualify this provision by judicial construction to read "except raw sugar not imported to be further refined or for human consumption." We do not believe such a construction is warranted. The Tariff Information Surveys, 1921, prepared by the United States Tariff Commission for the House Committee on Ways and Means, under "Tariff History," states:

In the United States refined sugar has always been subject to a higher duty than raw sugar, thus affording it a net protection. In early acts various terms were used to designate the higher grade sugars, such as white, clayed, or powdered sugar, and refined, loaf, lump, crushed, or pulverized, and the trade name of the sugar determined the rate of duty. An attempt at a more scientific classification was made in the act of August 5, 1861, by the introduction of the Dutch standard, in accordance with which the different grades were judged by color, the darker the color the lower the grade. The Dutch standard continued to be used until the act of October 3, 1913. In the act of March 3, 1883, however, the polariscopic test was combined with the Dutch standard. * * * An objection to the Dutch standard was that a sugar of high sucrose content might be artificially colored so as to bring it into a lower class, and hence pay a lower rate of duty than other sugars of equal sucrose content. The coloring matter might be of such a nature as to be easily removed after importation, and hence a high-grade sugar would be admitted at a rate too low for its grade.

The intent of Congress throughout the history of tariff legislation on sugar since 1913 has been to assess duties on the basis of the polariscopic sugar degree content, not upon the ultimate or intended use of the sugar. This is apparent from the sugar provision in the various tariff acts and from the statement from the Tariff Information

Surveys, 1921, quoted supra. Any other interpretation would in our opinion be contrary to what seems to us to be the clear intent of Congress that sugar duties shall be based solely upon the purity or sugar degree content of the imported sugar.

Appellant also contends that the Customs Court failed to apply the recognized limitations to the rule that an *eo nomine* statutory designation of an article will include all forms of the article, unless a contrary legislative intent, judicial decision, or administrative practice to the contrary is shown, citing *B. A. McKenzie & Co., Inc., et al.,* v. *United States,* 47 CCPA 42, C.A.D. 726, *Nootka Packing Co. et al.* v. *United States,* 22 CCPA 464, T.D. 47464, and *Smillie & Co.* v. *United States,* 11 Ct. Cust. Appls. 199, T.D. 38966.

The record here does not indicate any contrary legislative intent, judicial decision, or administrative practice which would require, as to the imported sugar, any modification of the rule as to *eo nomine* designation as stated in the foregoing cases. This then leaves for further consideration the question of whether, as referred to in the foregoing cases, there. is a contrary commercial designation. The product here in issue is designated as "Sweet Green Livestock Feed Sugar." It is, in fact, as shown on the record here, sugar which is taken from the centrifuge, colored by the addition of a green foodstuffs dye, and tumbled through a screen. The testimony of all the witnesses clearly establishes that the merchandise is raw sugar at the time the green color is added. Section 4502(3) of the Revenue Act of 1954 which defines "manufactured sugar" specifically states that its application is not limited to the sugars specifically enumerated therein. We agree with the Customs Court that this indicates "a congressional intention to impose a tax on all sugar substances." This would include, in our opinion, a raw sugar colored green, irrespective of its intended end uses.

We, therefore, agree with the following statement of the Customs Court:

> We are of the opinion that there are no circumstances present in this case which would require a departure from the general rule that an *eo nomine* designation, without limitation, includes all forms of the thing designated. It follows that the merchandise was properly held by the collector to be dutiable as sugar under paragraph 501 of the Tariff Act of 1930, regardless of whether it was suitable for use in animal feeds as a sweetener, and irrespective of the intention of the importer in having it dyed green.

Since we find that nothing has been here presented to remove the imported merchandise from its *eo nomine* classification as "sugar" in paragraph 501, and no proof has been submitted that the merchandise is a "new product" in a tariff sense, we find no reason to pass upon the alternative classification asserted by appellant. Our view has been concisely stated in Judge Donlon's concurring opinion below which we here quote and adopt as our own:

This merchandise was classified as sugar. The evidence shows that it is sugar. Sugar is an enumerated article. Plaintiff claims that this sugar was imported for the same use as a use that is enumerated for molasses; and, on that basis, plaintiff contends that its sugar should be classified as molasses, by invoking the similitude clause of paragraph 1559.

This is something plaintiff may not do.

It is well established that before the similitude clause may be invoked, all dutiable enumerations must be found to be inapplicable, except only paragraph 1558. See, 4 Customs Law Digest 156, *et seq.*, and cases there cited.

Plaintiff has made no case for classification of this sugar under the nonenumerated provisions of paragraph 1558. Therefore, plaintiff may not invoke the similitude clause of paragraph 1559.

We also agree, for the reasons stated above, with the decision of the Customs Court that the imported merchandise is a "manufactured sugar" within the definition of section 4502(3) of the Revenue Act of 1954, and therefore is subject to the additional tax imposed by section 4501 of that Act.

For the foregoing reasons we *affirm* the judgment of the Customs Court.