## ISHIMITSU v. UNITED STATES (No. 2094).[1]

1. EVIDENCE, BURDEN OF PROOF—PRESUMPTION FAVORS COLLECTOR'S DECISION.

The collector's classification is presumptively correct; and an appellant from it assumes the burden of showing that it is incorrect and that the one he contends for is correct.

2. ADVANCEMENT—MANUFACTURE.

The tariff act distinguishes between a mere advancement and a manufacture. An importation can not be assumed to be a manufacture merely because shown to be advanced.

---

[1] T. D. 38963.

3. Nori Tsukudani—Vegetables Prepared—Seaweed Manufactured.

A Japanese food product known as nori tsukudani, which is a seaweed boiled with a sauce called shoyu and packed in hermetically sealed cans, was classified by the collector under paragraph 200, tariff act of 1913, as prepared vegetables. It is claimed to be seaweed manufactured, under paragraph 372. Such a preparation can not be called a manufacture, and the collector's classification is not disturbed, though whether or not the merchandise is a vegetable within the meaning of that term in paragraph 200 is not decided.

United States Court of Customs Appeals, December 14, 1921.

Appeal from Board of United States General Appraisers, Abstract 44095.

[Affirmed.]

*Frank L. Lawrence* for appellant.

*Wm. W. Hoppin*, Assistant Attorney General (*George F. Lamb*, special attorney, of counsel), for the United States.

[Oral argument Oct. 4, 1921, by Mr. Hoppin.]

Before De Vries, Presiding Judge, and Smith, Barber, and Martin, Associate Judges.

Barber, Judge, delivered the opinion of the court:

The merchandise, the classification of which is involved in this case, was described in a report emanating from the appraiser's office as "a Japanese food product known as 'nori tsukudani.' This product is the seaweed 'nori' boiled with shoyu and packed in hermetically sealed tin cans of the net capacity of about 13 ounces."

This report was incorporated into the record by consent of counsel, was by the board, is by parties here, and by this court regarded as evidence, and aside from the files is the only evidence in the case.

The merchandise was classified by the collector as prepared vegetables under that part of paragraph 200 of the tariff act of 1913, which provides for—

Vegetables, if cut, sliced or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for.

The importer in his protest claimed free entry under paragraph 552 of the act providing for—

Moss, seaweeds, and vegetable substances, crude or unmanufactured, not otherwise specially provided for—

or, in the alternative, that it should be classified under paragraph 372, which provides for—

Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed.

In his brief in this court no oral argument is made in his behalf, importer does not contend for free entry under paragraph 552, but claims only under paragraph 372.

The Board of General Appraisers overruled the protest upon the authority of T. D. 33732 (Abstract 33521), decided in September,

1913, in which it was held that seaweed, known as "nori," put up in soy sauce in hermetically sealed tins, was classifiable under paragraph 252 of the act of 1909, which in legal effect is like paragraph 200, above quoted.

In that case the claim was made for classification under paragraph 630, which was like 552 of the act of 1913, or alternatively under 78, which was like 372 of the present act. The abstract decision contains no discussion of the issue, but contains the statement that T. D. 31053 (Abstract 24168) is followed.

In the abstract last mentioned the question was whether an article known as "canned seaweed nori," which was put up in small tins hermetically sealed and used among the Chinese as a vegetable, was classifiable under paragraph 630 or 252 or 78 of the act of 1909, already referred to.

The issue was considerably discussed in this abstract opinion, rendered in 1910, by Waite, general appraiser. It was held, first, that canned seaweed could not properly be considered a manufactured seaweed, because it had not been changed into any different article or made to serve any different purpose than when in its original state. (It did not appear just what, if any, treatment the seaweed had undergone before being placed in the tins, but the opinion states that in other cases involving similar goods there was evidence that the seaweed had been simply put up in tins in salt water.)

After reaching this conclusion, in support of which relevant authorities were cited, Judge Waite proceeded to consider whether the seaweed was classifiable as a crude seaweed, or as a vegetable packed in salt, brine, or prepared in any way. It was held it clearly was not in its crude condition; that packing it in the sealed tins was alone sufficient to bring it within the category of prepared goods, and considering it to be a vegetable, the classification under paragraph 252 was sustained and the protest overruled.

In the instant case the board said that hermetically sealing was a preparation process, citing T. D. 38513 (G. A. 8377). Obviously it is at least a preservation process in this case.

As already stated, importer here does not claim this merchandise to be crude. He points out that in United States v. Furuya & Co. (7 Ct. Cust. Appls., 495; T. D. 37109) and United States v. Ohashi Importing Co. (7 Ct. Cust. Appls., 487; T. D. 37106) dried seaweed, with nothing added to it, packed in tin boxes, was held to be classifiable under paragraph 552, and argues that if that merchandise was crude; that is, unmanufactured, it is obvious that this, in view of the fact that it has been boiled with shoyu and packed in hermetically sealed tin cans, is seaweed manufactured, and on this proposition, assumed to be supported by two or three

citations, rests his case. That is, if we understand importer's claim, it is, that the seaweed, if not crude, but advanced in condition, as shown here, thereby ipso facto becomes seaweed manufactured.

The Government contends that this seaweed is not manufactured within the purview of paragraph 372, that it is a vegetable, and is prepared within the scope of paragraph 200, and if not directly classifiable thereunder is so by similitude.

At the outset it will be observed that the assessment by the collector presumptively establishes that this seaweed is a food product and classifiable under paragraph 200, as a vegetable prepared in any way, and that it devolves upon the importer to show not only that it is not such, but to establish, as this case stands, that it is seaweed manufactured, failing which the judgment below must be affirmed.

The determination of what is a "manufacture" of a given article, or when a thing is "manufactured" within the contemplation of tariff statutes, has occupied the attention of the courts in a great number of cases, to review a majority of which is a task of no small magnitude, and which we do not deem it necessary to undertake.

The derivation from the Latin *manus*, hand, and *facio*, to make, of "manufacture" as a noun, indicates that its original meaning was something made by hand, while as a verb it would mean the hand processing necessary to produce the thing. While this meaning has been enlarged, yet, there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

In Hartranft *v.* Wiegmann (121 U. S., 609) the question as to whether certain articles were "shells, manufactures of" or "shells not manufactured" stood for decision. The articles were shells the outer layer of which had been cleaned off by acid, the second layer ground off by an emery wheel so as to expose the brilliant inner surface, the object of the processing being for the purpose of ornament. Some of the shells contained inscriptions etched by acid thereon. All were designed to be used as ornaments, but shells of the same descriptions were used to make buttons and the handles of penknives. There was no difference in name and use between the shells ground on the emery wheel and those not ground.

The Government claimed these shells to be shells manufactured or manufactures of shells.

The court held they were neither, but were shells not manufactured, and among other things said:

The application of labor to an article, either by hand or mechanism, does not make the article necessarily a manufactured article within the meaning of that term as used in the tariff laws.

It was also in substance and by way of illustration said that washing and scouring wool or cleaning and ginning cotton did not result in a manufacture of wool in the one case and of cotton in the other.

In Tidewater Oil Co. v. United States (171 U. S., 210), where the question was whether certain boxes had been wholly manufactured in this country of imported materials, it was said that—

Ordinarily the article so manufactured takes a different form, or at least subserves a different purpose, from the original materials, and usually it is given a different name. Raw materials may be, and often are, subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product.

In Anheuser-Busch Association v. United States (207 U. S., 556) the court said, referring to the words "manufacture" and "manufactured," as found in a statute providing for drawback:

The words of the statute are, indeed, so familiar in use and of meaning that they are confused by attempts at definition. Their first sense as used is fabrication or composition—a new article is produced, of which the imported material constitutes an ingredient or part. When we go further than this in explanation, we are involved in refinements and in impracticable niceties. Manufacture implies a change, but every change is not a manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. * * * Something more is necessary. * * * There must be a transformation, a new and different article must emerge having a distinctive name, character, or use.

It was held in Murphy v. Arnson (96 U. S., 131) that the mixture of benzol and nitric acid, which combined, by reason of their chemical affinity, and resulted in nitrobenzol, was a manufacturing process, and that the nitrobenzol was a manufacture, just as glass was a manufacture from sand and fixed alkalies. It was said of the nitrobenzol: "The original elements are fluids, and the manipulation and the materials blending with each form a union, which is as much a manufacture within the meaning of the statute as where the materials are mechanically joined together." The court took occasion to say, in substance, that generally speaking patent medicines were manufactures, that beer was manufactured from malt and other ingredients, whisky from corn, or cider from apples.

Upon the question of whether a given commodity is or is not manufactured reference may also be had to United States v. Potts et al. (5 Cranch, 284); Lawrence v. Allen (48 U. S., 785); Meyer v. Arthur (91 U. S., 570); Seeberger v. Castro (153 U. S., 32); United States v. Dudley (174 U. S., 670); Schriefer v. Wood (21 Fed. Cases, 737); Rossman v. United States (1 Ct. Cust. Appls., 280; T. D.

31321); Malouf *v.* United States (1 Ct. Cust. Appls., 437; T. D. 31502; Fenton *v.* United States (1 Ct. Cust. Appls., 529; T. D. 31546); United States *v.* Winter & Smillie (4 Ct. Cust. Appls., 392; T. D. 33836); United States *v.* Schrock & Squires (5 Ct. Cust. Appls., 444; T. D. 34974); Mawer *v.* United States (7 Ct. Cust. Appls., 493; T. D. 37108); Lackawanna Steel Co. *v.* United States (10 Ct. Cust. Appls., 93; T. D. 38359).

The record here establishes that this seaweed is a food product. Shoyu is a sauce for fish or vegetables. This sauce has been placed with the seaweed, the combination boiled and packed in hermetically sealed cans. It is difficult to understand how or why seaweed thus treated can be said to be seaweed manufactured. It has not been manufactured into anything different than what it first was, namely, a food product. Certainly the preservation thereof, which is accomplished by hermetically sealing in tin cans, is not necessarily a process of manufacture. This seaweed may be and probably is advanced in condition, but that of itself does not necessarily constitute a manufacture. When an advance in the condition of a given commodity is declared to require a different classification, appropriate language to that effect is usually employed, as for illustration, in paragraph 27, providing for—

drugs * * * advanced in value or condition by shredding, grinding, chipping, crushing, etc.

Any of these operations would ordinarily be a manufacturing process and might result in a manufactured article, but Congress in the paragraph has taken pains to make an *advanced* condition, not a *manufactured* condition, the test of classification, thereby showing that it recognizes that a distinction between the two may exist. Other equally apt illustrations may be found in various paragraphs of the act.

As was said in the case of Anheuser-Busch Association *v.* United States, supra, while manufacture implies a change, every change is not a manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. So at the most, this imported seaweed, although manipulated and probably advanced in condition, has not been manufactured. It was edible seaweed in its first estate; it is edible seaweed still; it may be more appetizing by reason of the sauce upon it, but that fact does not make it seaweed manufactured.

This conclusion disposes of the case, because the importer has failed to establish his contention that the importation is seaweed manufactured. There may be something in the claim that it is not a vegetable within the provisions of paragraph 200, but upon the meager record before us it is not deemed advisable and it is not necessary to explore that field.

The judgment of the Board of General Appraisers is *affirmed.*