269

(C. D. 1612)

George Beurhaus Co.
Hoyt, Shepston & Sciaroni } v. United States

United States Customs Court, Third Division

(Decided April 22, 1954)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before Ekwall and Johnson, Judges

Johnson, Judge: This is a protest against the collector's assessment of duty on merchandise, described in the official papers as raw pumpkin seeds, at 20 per centum ad valorem under paragraph 1558, Tariff Act of 1930, as nonenumerated manufactured articles. It is claimed that the merchandise is free of duty under paragraph 1722 of said tariff act, as crude vegetable substances, or is dutiable at 5 per centum ad valorem under paragraph 1558, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as nonenumerated raw or unmanufactured articles, or at 10 per centum ad valorem under paragraph 1558, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827, apparently as nonenumerated manufactured articles not excepted

from the modification. The latter claim, while referred to in counsel's opening statement at the trial, was not mentioned in the brief. It appears from the consumption entry that this merchandise was originally entered as seed under paragraph 764, but no claim has been made for classification under that paragraph.

The pertinent provisions of the tariff act and the modifications thereof are as follows:

PAR. 1558 [Tariff Act of 1930]. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1558 [as modified by the General Agreement on Tariffs and Trade, T. D. 51802]. All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs), 5% ad val.

PAR. 1558 [as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the President's proclamation of September 18, 1951, T. D. 52827]. Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; and edible preparations for human consumption other than yeast), 10% ad val.

PAR. 1722 [Tariff Act of 1930]. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for. [Free.]

George H. Beurhaus, owner of George Beurhaus Co., called as a witness by the plaintiffs, testified that he was familiar with the merchandise involved herein, having seen it on its arrival in this country and at his plant during and after processing. He had purchased it from Davidson y Compañía in Mexico and had seen merchandise of its kind being prepared by his suppliers in that country. He stated that after pumpkin seeds come into the plant there, they are moistened, and a 5-gallon bucketful dumped in front of each operator. The operator either snips open the end of the seed with a scissors or breaks it with her fingernail and then picks out the kernel. The shucks are thrown to one side and the moist kernels put to another. The latter are then placed on canvas in the sun for 4 to 6 hours to dry out the excess moisture that had been added. The reason for moistening the seeds before peeling is that they are brittle and it would be impossible otherwise to pick out the kernels, whole, without breaking them.

Mr. Beurhaus testified that after the merchandise arrives here, the seed kernels are immersed in vegetable oil, cooked, and salted. They are eaten as an appetizer, like peanuts, at parties or with cocktails.

According to Mr. Beurhaus, the processing in Mexico does not preserve the seeds. He stated that he had never imported the seeds unshelled, but that if he had, he would have had to shell them before processing.

Samples of pumpkin seeds and kernels were introduced into evidence at the trial. Plaintiffs' illustrative exhibit 1 represents the seeds as they appear prior to shelling; plaintiffs' illustrative exhibit 2 represents the kernels of the seeds in the condition in which they are imported; and plaintiffs' illustrative exhibit 3 represents the kernels after they have been processed and packaged in this country. The items in plaintiffs' illustrative exhibit 1 are oval seed pods over an inch long, each with a kernel inside. They are white in the center and gray on the edges, and are fairly flat. Plaintiffs' illustrative exhibit 2 contains the kernels, which are about ½ to ¾ inch long, are fairly flat, and green in color. They appear to be in the same condition as the kernels in the seed pods in plaintiffs' illustrative exhibit 1. The articles in plaintiffs' illustrative exhibit 3 are plump, shiny, green, seed kernels.

The questions before us are, first, whether the merchandise, as imported, consists of articles manufactured in whole or in part, and, second, if unmanufactured, whether it is classifiable as vegetable substances, crude or unmanufactured, or as nonenumerated raw or unmanufactured articles.

Plaintiffs claim that the merchandise is unmanufactured on the ground that nothing has been done to it beyond getting the kernels by themselves, free of the shells. Defendant contends, however, that the merchandise has been partially manufactured on the ground that the processing in Mexico consisted of some of the steps required to be taken in the development of the finished article, plaintiffs' illustrative exhibit 3.

It is to be noted first that the imported merchandise consists of pumpkin seed kernels, not whole pumpkin seeds, and that all that has been done to the kernels, *per se*, after removing them from the pods, is to dry out the moisture which had been added to facilitate the process. Defendant claims that the imported merchandise has been partially manufactured because shelling or peeling the seeds was one of the steps necessary to the development of the finished article. It might likewise be claimed that removing the seeds from the pumpkin and taking the pumpkin from the vine were such steps. All of those operations were, of course, necessary to the production of the finished article, but they were primarily required for the purpose of obtaining the seed kernels free from the pods. Every application of labor is not a manufacturing process and it has long been held that an operation which is necessary to get an article of commerce by itself is not such a process. *United States* v. *Sheldon & Co.*, 2 Ct. Cust. Appls. 485, T. D. 32245; *Cone & Co. (Inc.)* v. *United States*, 14 Ct. Cust. Appls. 133, T. D. 41672; *United States* v. *United States Rubber Co.*, 31 C. C. P. A. (Customs) 174, C. A. D. 269; *V. W. Davis* v.

272

*United States*, 10 Cust. Ct. 189, C. D. 751; *J. E. Bernard & Company, Inc.* v. *United States*, 30 Cust. Ct. 122, C. D. 1509.

The merchandise involved in *Cone & Co. (Inc.)* v. *United States, supra,* consisted of palmyra fiber, a product of the palmyra palm, prepared by cutting the leaf from the tree, pounding the pattal to free the fibers from the pulp, and hackling the fibers. It was held that the extraction of the fibers from the leaf was not a manufacturing process since it merely freed the fibers from their impurities and got them by themselves. The court stated that the processes necessary to produce the fibers were not to be considered as manufacturing operations, but that any processes applied to the fibers themselves, advancing them in condition, were such operations.

In the instant case, the processing of the pumpkin seeds in Mexico was necessary to produce the kernels. The only process applied to the kernels themselves was drying, which did not advance them, but returned them to their natural condition.

*V. W. Davis* v. *United States, supra,* involved wild rice produced as follows: After harvesting, the green rice was placed in a washtub or kettle over a fire and constantly stirred until it became chocolate brown. It was then spread out to cool and afterwards placed in a hole lined with clay where it was thrashed by trampling. The chaff was blown away by the wind or by artificial means. There was evidence that wild rice had to be parched in order to remove the hulls, and that, incidentally, the parching improved the flavor. The court held that the processes applied to the article in its native state were solely to obtain a merchantable article of commerce and were not to be regarded as manufacturing.

In the instant case also, the processing merely removed the hulls and was necessary to obtain the imported article of commerce.

In a number of cases kernels of nuts or seeds have been held to be crude, rather than advanced, drugs on the ground that nothing has been done except to get the articles by themselves. *Doap Leun Hong Co.* v. *United States,* 19 C. C. P. A. (Customs) 313, T. D. 45481; *United States* v. *Yick Shew Tong Co.,* 25 C. C. P. A. (Customs) 255, T. D. 49392; *Oy Wo Tong Co.* v. *United States,* 5 Cust. Ct. 70, C. D. 372. In *Cowl* v. *United States,* 124 Fed. 475, guarana, a paste prepared by shelling certain seeds, moistening the kernels in water, removing a paper film from the kernels, and pounding them into mortar, was held to be a crude drug and not a medicinal preparation.

Defendant relies upon *Song Kee & Co.* v. *United States,* 7 Cust. Ct. 111, C. D. 548. That case involved melon seeds, which, after extraction from the melon, were washed, mixed with oil and coloring matter, and then fried with more oil. They were classified by the collector as garden seeds under paragraph 764 of the Tariff Act of 1930, as modified, and were claimed to be dutiable under paragraph 1558, as nonenu-

merated unmanufactured articles. The court held that they were not seeds since their germinating quality was not sufficient to meet the statutory definition of seeds, but that they had been manufactured in part and would have been dutiable as nonenumerated manufactured articles had that claim been made. The court stated that the processing applied to the merchandise had created a different article, with a new character and use; that it had lost its character as seeds and acquired a new use as food.

See also *United States* v. *Shing Shun & Co.*, 2 Ct. Cust. Appls. 388, T. D. 32113, involving melon seeds, which had been peeled, salted, and roasted, and were used as a relish. The merchandise was held not to be a seed because its germinating power had been lost, but a manufactured article since it had been prepared for immediate use as food.

It is clear that the merchandise in both of those cases had been further processed than that in the instant case. Those seeds were ready for use as food while the seed kernels here have merely been removed from their shells and must be subjected to other operations before they are ready for use as food.

We conclude, therefore, that the merchandise involved herein does not consist of manufactured articles.

The next question is whether it is classifiable as vegetable substances, crude or unmanufactured, under paragraph 1722 of the Tariff Act of 1930.

In *Reed & Keller* v. *United States*, 5 Ct. Cust. Appls. 95, T. D. 34133, the court discussed a predecessor of this paragraph (paragraph 630, Tariff Act of 1909) and held that while the term "vegetable substances" therein could not be limited to articles that were strictly *ejusdem generis* with moss and seaweeds, the other enumerated items, it did not include every substance that was a product of the vegetable kingdom. The court indicated that the term should be limited to the products of the lower forms of plant life and, consequently, held that birch bark was excluded from classification as a vegetable substance. See also *Rubber Association of America* v. *United States*, 11 Ct. Cust. Appls. 46, T. D. 38689, excluding cauchillo gum, a product obtained from a South American tree.

In another line of cases it has been held that where the article is a byproduct or residue from a manufacturing operation, it is not classifiable as a vegetable substance, crude or unmanufactured. *Geo. S. Bush & Co. (Inc.)* v. *United States*, 34 Treas. Dec. 6, T. D. 37471 (rice bran, middlings, and shorts, the byproducts from scouring and cleaning rice); *Koons, Wilson & Co.* v. *United States*, 12 Ct. Cust. Appls. 418, T. D. 40589 (beet pulp, the dried residue from sugar beets after the extraction of the sugar); *James P. Smith & Co.* v. *United States*, 21 C. C. P. A. (Customs) 514, T. D. 46971 (mustard dross, the residue of the hull or bran after the mustard has been made); *Cia.*

*Algodonera* v. *United States,* 23 C. C. P. A. (Customs) 42, T. D. 47686 (cottonseed hulls obtained as a byproduct in the manufacture of cottonseed oil and meal).

In *United States* v. *Wallace,* 4 Ct. Cust. Appls. 142, T. D. 33413, it was held that the term "vegetable substances" included edible vegetable substances, such as horse-radish roots, used as a condiment. In the course of its opinion, the court noted the following decisions of the Board of General Appraisers, permitting free entry to various articles as vegetable substances: *J. A. Wright et al.* v. *United States,* T. D. 14705, G. A. 2427 (cottonseed hulls, commonly used as food for cattle); *The Potter Parlin Company* v. *United States,* T. D. 14739, G. A. 2461 (mustard hulls, used as an ingredient in mustard and spice preparations); *Herman Kienzler* v. *United States,* T. D. 14836, G. A. 2519 (tonkabean crystals); *Wilkens & Co.* v. *United States,* T. D. 15417, G. A. 2811 (dried coconut meat, divested of the shell and broken into fragments); *I. McNiven* v. *United States,* T. D. 16228, G. A. 3107 (oat chaff); *S. S. McCrea* v. *United States,* T. D. 18020, G. A. 3864 (pea hulls intended to be mixed with screenings and used as cattle feed); *Otto G. Mayer & Co.* v. *United States,* T. D. 20038, G. A. 4260 (pine cones); *E. Reboulin Fils & Co.* v. *United States,* 7 Treas. Dec. 64, T. D. 24917 (angelica stalks intended to be candied and made into sweetmeats); *Peter Van Schaack & Sons* v. *United States,* 7 Treas. Dec. 130, T. D. 24962 ("loofahs," the pith of a gourd, the skin, rind, and seeds having been removed).

Later cases on this subject include *H. H. MacDonaugh & Co.* v. *United States,* 58 Treas. Dec. 406, T. D. 44311 (cherry leaves packed in brine to be used as wrappings for Japanese cakes); *E. Berghausen Chemical Co.* v. *United States,* 60 Treas. Dec. 725, T. D. 45221 (broken pieces of saparita-nut shells to be used in the manufacture of emulsifiers); *Louis G. Rojas et al.* v. *United States,* 21 Cust. Ct. 68, C. D. 1129 (cornhusks, dried, detached from the cornstalks, the corn having been removed).

In the case last cited, the court said (pp. 71-72):

\* \* \* The corn husks before us are identical with the corn husks found upon corn stalks. There has been no change in them that would dedicate them to a specific use. They were crude vegetable substances while upon the corn stalks and so still remain.

\* \* \* \* \* \* \*

\* \* \* The corn husks and cornstalks are not the residuum of any process of manufacture, nor may they be considered corn. All that can be said of such material—and the material in question—is that it is the native vegetable matter which surrounds the ears of corn. All that has been done is to separate such vegetable matter from the ear or stalk by severing the husks therefrom.

In the instant case, the pumpkin seed kernels are identical with the kernels found in the seed. There has been no change in them dedi-

cating them to a particular use. They are not the residuum of any manufacturing process. They are native vegetable matter to which nothing has been done except to remove them from the surrounding seed pods. They are the product of a lower form of plant life and are similar to other products which have been held to be crude or unmanufactured vegetable substances.

We hold, therefore, that the within merchandise, pumpkin seed kernels, is entitled to free entry under paragraph 1722 of the Tariff Act of 1930, as vegetable substances, crude or unmanufactured.

The protest is sustained and judgment will be rendered for the plaintiffs.