BEFORE THE SECOND DIVISION, JUNE 19, 1963

No. 67834.—S. Bernard Schwartz v. United States, protests 60/23210, 60/23211, and 60/23212 (New York).

LAWRENCE, Judge: Certain merchandise, described as "DRAWN BRASS RODS" appearing on the commercial invoices accompanying the entries covered by the three protests herein, which have been consolidated for purposes of trial, was classified by the collector of customs as articles in chief value of brass, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 20 per centum ad valorem.

Plaintiff herein controverts said classification and duty assessment, contending that the merchandise in issue should properly have been classified as brass rods or bars in paragraph 381 of said act (19 U.S.C. § 1001, par. 381), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which provides duty at the rate of 2 cents per pound.

The statutory provisions above referred to are here set forth for ready reference.

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly manufactured:

     *        *        *        *        *        *        *

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Not wholly or in chief value of tin or tin plate:
　Carriages, drays, \* \* \*
　Other, composed wholly or in chief value of \* \* \*
　　brass, \* \* \*_____ 20% ad val.

Paragraph 381 of said act, as modified by the General Agreement on Tariffs and Trade, *supra:*

Brass rods, sheet brass, brass plates, bars, and strips, \* \* \*_____ 2¢ per lb.

Prior to the presentation of evidence, counsel for the adversary parties stipulated and agreed that an item of merchandise listed as "hexagonal" on the commercial invoice accompanying entry 850958, covered by protest 60/23211, which was classified as articles composed in chief value of brass, not specially provided for, in paragraph 397 of the tariff act, as modified by the sixth protocol, *supra,* and assessed with duty at 20 per centum ad valorem, is, in fact, brass rods of the kind provided for in paragraph 381 of said act, as modified by the General Agreement on Tariffs and Trade, *supra,* and is properly dutiable at 2 cents per pound, as claimed by plaintiff.

In support of its contention that the merchandise described as "DRAWN BRASS RODS" on the commercial invoices should be classified as brass rods or bars in paragraph 381 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra,* the plaintiff offered the testimony of two witnesses.

S. Bernard Schwartz, importer of the merchandise in issue and plaintiff herein, testified that he buys and sells merchandise of the type before the court and had been in this business for the past 10 years. He usually purchases the merchandise abroad and sells it throughout the United States. The articles in controversy were imported in 12-foot lengths. Samples of the items, described on the invoices as 17–1, 15–1, and 10–1 or as R–17–1, R–15–1, and T–10–1, were received in evidence as plaintiff's exhibits 1, 2, and 3, respectively.

Schwartz had seen merchandise like the 12-foot rods represented by exhibits 1, 2, and 3 manufactured, which was by drawing and extrusion of a billet, the extrusion being through a die which gave the articles their shape. He had also seen hexagonal, round, and semiround rods produced by like means of drawing and extrusion. When he purchased the material in issue abroad, he did not pay anything extra for the difference in shapes of exhibits 1, 2, and 3, as contrasted to the hexagonal rods, except for the fact that the tooling of the particular shape had to be "amortized" through the purchase of a minimum quantity.

As imported, the rods in 12-foot lengths are chamfered on one end. The witness stated the chamfered end of the rods, represented by exhibits 1, 2, and 3, is put into a screw machine, milled, and further worked. The end result is a semifinished valve body, specifically a swing check, the size of which depends upon the size of the rod. Schwartz explained that a swing check is a type of valve used in the plumbing and heating industry.

The witness testified that he had seen hexagonal, round, and semiround rods used in this country and that said rods were made into finished items such as fittings, bolts, or nuts, by machining similar to that for the production of swing checks from exhibits 1, 2, and 3 in the instant case.

The imported merchandise, represented by exhibits 1, 2, and 3, is ordered in the particular cross-sectional shapes rather than as a round, semiround, or hexagonal shape as a matter of economy. Inasmuch as the end product is such

that it resembles the shape of the imported rods, the saving in material is considerable.

The merchandise at bar was purchased from the foreign supplier as free machining brass rod, ASTM B 16–52 ("ASTM," The American Society for Testing Material), and it was sold to a fabricator as free machining brass rod. The fabricator had ordered the rod to conform with the cross-sectional shape of R–17–1, R–15–1, and T–10–1.

Dennis J. Kelly, an examiner of merchandise at the port of New York for the past 17 years, appeared as a witness for the plaintiff in response to a subpoena duces tecum. He stated that he is familiar with merchandise represented by the instant importation and, through his training and experience, is familiar with the manufacturing method by which it is produced. Exhibits 1, 2, and 3 are customarily produced by extrusion and sometimes by subsequent drawing through dies. It is the shape of the die which determines the particular cross-sectional shape of the material.

Merchandise like exhibits 1, 2, and 3 is generally used to make metal components of various outlines for various uses and is produced on a screw machine. Kelly testified that material in 12-foot lengths of solid section, but in round, hexagonal, or octagonal cross-sectional shape, which is generally produced by extrusion and sometimes subsequently drawn, the same methods as are used in the production of exhibits 1, 2, and 3 herein, is advisorily classified by him as brass rods in paragraph 381.

When asked what, in his experience, is the reason for the particular cross-sectional shapes of exhibits 1, 2, and 3, the witness replied the purpose is to minimize scrap loss.

Kelly identified five pieces of metal as being of the same geometric or irregular pattern as the brass rods or bars which were the subject of decision in *John V. Carr & Son, Inc.* v. *United States*, 33 Cust. Ct. 286, C.D. 1666, with which decision he was familiar. The metal pieces referred to were received in evidence as plaintiff's collective exhibit 5. Upon being asked to compare the method of manufacture of merchandise represented by exhibits 1, 2, and 3 with that represented by collective exhibit 5, he explained that they are made in the same manner, by extrusion and, probably, subsequent drawing. When asked to compare the use of the respective articles, he stated that the merchandise represented by collective exhibit 5, after being processed on screw machines, resulted in the production of components for the automobile industry and that exhibits 1, 2, and 3 were also manufactured into articles on screw machines.

Plaintiff's motion to incorporate the *Carr* case, *supra*, was granted by the court.

On the record thus presented, which stands uncontradicted, the question to be determined is whether the merchandise in issue, which is composed of brass in irregular cross-section of straight lengths, measuring 12-feet, should properly be classified as brass rods or bars in paragraph 381 of the Tariff Act of 1930, as modified, as claimed by plaintiff. The irregular cross-sectional shape referred to may be described generally as follows: The contour of the 12-foot solid sections, represented by exhibits 1 and 3, which are approximately 15/16ths of an inch in overall width and height, and exhibit 2, approximately 7/8ths of an inch, may broadly be described as octagonal in shape, with one side of the octagon nearly twice the width of the other sides and slightly flanged.

In the *Carr* case, *supra*, the merchandise, consisting of brass rods or bars in 7-foot or 12-foot lengths, of decagonal, half-oval, and rectangular-on-rectangular cross-section, which had been classified by the collector of customs as articles composed in chief value of brass in paragraph 397 of the Tariff Act of 1930, as

modified, were held properly subject to classification as brass rods or bars in paragraph 381 of said act.

As in the *Carr* case, so too here, the evidence is clear that solid section brass rods or bars of *regular* cross-sectional shapes, such as round, semiround, or hexagonal, would be subject to classification within the provision for brass rods or bars in said paragraph 381.

Inasmuch as the merchandise in issue, represented by exhibits 1, 2, and 3 herein, conforms to the concept and understanding of what constitutes a rod or bar for the purposes of classification in paragraph 381, with the sole difference that the instant merchandise is of irregular cross-section, the court is of opinion that said difference does not preclude the classification sought.

In the *Carr* case, *supra*, the following appears—

* * * It seems to be agreed that the merchandise represented by exhibit 6 (hexagonal in shape) was properly classified for duty by the collector as a brass rod and that exhibit 7 (rectangular in shape) represents the merchandise which belongs in the class of brass bars. We perceive no sound reason, based upon the record before us, why exhibits 1 through 5, which are made in the same manner from the same raw material as exhibits 6 and 7, should take any different classification. In addition to their similarity of material and construction, they are all used for substantially the same general purposes.

There was unrefuted testimony, in the *Carr* case, to the effect that brass rods or bars of decagonal, half-oval, and rectangular cross-sectional shape, as well as brass rods or bars of hexagonal and rectangular cross-section, were known and sold in the United States prior to and since 1930 as brass rods or brass bars. As stated by the court in the *Carr* case—

It is a well-known and long-established principle of statutory construction that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article." *Nootka Packing Co. et al.* v. *United States*, 22 C.C.P.A. (Customs) 464, 470, T.D. 47464. The same doctrine was announced many years earlier in *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966.

We are of the opinion that the reasoning and the conclusion reached in the *Carr* case, *supra*, apply with equal force and effect to the factual situation, the question presented, and the law to be applied in the present instance.

Accordingly, we hold that the merchandise, described as "DRAWN BRASS RODS" on the commercial invoices accompanying the entries covered by the protests enumerated in the schedule attached to and made a part of this decision, should properly have been classified as brass rods or bars in paragraph 381 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, and subjected to duty at the rate of 2 cents per pound, as claimed by plaintiff. We similarly hold as to the item of merchandise described as "hexagonal" on the commercial invoice accompanying entry 850958 covered by protest 60/23211. To the extent indicated, the claims in the protest are sustained.

Judgment will be entered accordingly.