### JOHN V. CARR & SON, INC.

v.

### UNITED STATES.

C.D. 3402; Protests Nos. 65/22502–8180, 65/23860–8228, and 66/1482–8238.

United States Customs Court,
Third Division.

April 15, 1968.

John C. Ray, Detroit, Mich., for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Glenn E. Harris and Steven R. Sosnov, New York City, Trial Attys.), for defendant.

Before RICHARDSON and LANDIS, Judges, and DONLON, Senior Judge.

DONLON, Judge:

These three cases were consolidated for trial at Detroit. Plaintiff gave oral notice of intention to amend its protest claims, but the record shows that the court did not then act because defendant requested that the amendment be submitted in writing. The appropriate motions to amend were thereafter filed, and the amendment ordered.

On the claims made, as amended, the cases were resubmitted for decision on the record adduced on trial.

The merchandise at bar consists of sunflower seeds which were imported from Canada at various dates during the year 1962. It was stipulated by the parties, as a fact, that all of the seeds at bar were hulled, with the exception of 56 per cent (by weight) of the seeds of entry No. 22310 (protest 65/22502), and that those seeds were not hulled.

The collector found, by laboratory analysis, that certain of the imported seeds had a germination count below 75 per cent. On seeds with a germination count of less than 75 per cent, the collector assessed duty at the rate of 20 per centum ad valorem, reporting to the court on form 4297 (in transmitting the protests) that he had classified those seeds under paragraph 1558 as an edible preparation for human consumption, manufactured in whole or in part and not specially provided for. While his report does not state, the classification language reported results from the modification of paragraph 1558 that was effected by the Torquay Protocol to the General Agreement on Tariffs and Trade, which excludes from the Torquay rate reduction "edible preparations for human consumption, other than yeast."

It was stipulated by counsel that all of the seeds involved in the litigation are fit for human consumption. (R. 6, 7.)

To the extent that the collector found the seeds at bar to have a germination count of 75 per cent or more and assessed duty thereon, as entered, either at 1 cent or at 0.9 cent per pound, according to entry date, plaintiff's protests do not assert error. Such classification is not in issue.

The issues before us are whether the seeds that had a germination count below 75 per cent are dutiable under unmodified paragraph 1558, as assessed; or, as plaintiff's alternative claims assert, either under paragraph 762, as sunflower seeds or under paragraph 1558 as nonenumerated unmanufactured articles.

However, there is no controversy as to whether the sunflower seeds of entry No. 22310 that had not been hulled at the time of importation, are or are not manufactured. The unhulled state of such seeds is accepted by defendant as confirming so much of plaintiff's claim as asserts that those seeds were not manufactured, either in whole or in part. Defendant's brief states:

As to the unhulled merchandise in Entry No. 22310, the Government concedes that plaintiff's alternate claim under paragraph 1558, supra, is correct. (Defendant's brief, p. 2.)

The competing tariff provisions are as follows:

Paragraph 1558, Tariff Act of 1930, as modified by the Torquay Protocol, supra (T.D. 52739):

> Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; and edible preparations for human consumption other than yeast) . . . 10% ad val.

Paragraph 1558 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade (T.D. 51802):

> All raw or unmanufactured articles not enumerated or provided for (except frogs and frog legs) . . . . . . 5% ad val.

Paragraph 762, Tariff Act of 1930, as modified by the Torquay Protocol, supra (T.D. 52739):

> Sunflower seed . . . . 1¢ per lb.

Paragraph 762, Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, (T.D. 55615):

> Oil—bearing seeds and materials:
>> Sunflower seed . .0.9¢ per lb.

Since the provisions of paragraph 1558 exclude articles which are specially provided for, we first turn to consideration as to whether the merchandise at bar is within the sunflower seed enumeration of paragraph 762. Plaintiff's primary claim is that these are sunflower seeds and that, therefore, they are specially provided for by *eo nomine* enumeration.

That these were, initially, seeds of the sunflower plant is not questioned. It was so stipulated. Indeed, those of the imported seeds that had a germination count of 75 per cent or more were classified by the collector as sunflower seeds under the paragraph 762 enumeration. Nor does plaintiff argue that the laboratory tests were inaccurate in their findings as to germinating capability.

The nub of the controversy, then, is whether sunflower seeds that do not have a germinating capability of at least 75 per cent, are such sunflower seeds as are enumerated in paragraph 762.

Cases bearing on this issue, cited in the briefs before us, include the following:

> Albers Bros. Milling Co. v. United States, 2 Cust.Ct. 194, C.D. 122, construing classification of kiln dried kaoliang seed.

> Sokol & Co. v. United States, 4 Cust.Ct. 164, C.D. 313, in which the merchandise was sesame seed.

> R. J. Roesling & Co. v. United States, 10 Cust.Ct. 117, C.D. 734, "pracaxy seeds".

> George Beurhaus Co. et al. v. United States, 32 Cust.Ct. 269, C.D. 1612, pumpkin seed kernels.

> United States v. Lineiro, 37 CCPA 5, C.A.D. 410, grain sorghum classified as grass and forage crop seeds n. s. p. f.

While not cited by the parties in their briefs, there are also some even earlier cases, possibly pertinent to the law which we are to apply, in which seed classification was in issue, including the following:

> Brown & Co. et al. v. United States 14 CCPA 96, T.D. 41588, dead lotus nuts.

> United States v. Albers Bros. Milling Co. and Geo. S. Bush & Co., 19 CCPA 88, T.D. 45226, millet seed.

In *Brown,* supra, the tariff provision construed, as to seeds, was paragraph 762 of the Tariff Act of 1922. The merchandise, as noted above, was described as dead lotus nuts, that is to say lotus nuts which had been dried and split and from which the embryos had been extracted. This processing prepared the lotus nuts for use as food, and they were so used.

Paragraph 762 of the 1922 Act provided that "the provisions for seeds * * * shall include such seeds whether used for planting or for other purposes."

In his opinion written for a unanimous court, Judge Hatfield summarized the issue, as follows:

> It is claimed by counsel for the Government that the merchandise in question was properly assessed by the collector; that the germinating properties of the seed having been removed in the process of preparing them for use as a food, they have ceased to be seed within the ordinary meaning of that term, and, as they are used as a vegetable in the preparation of soup, they were properly held by the court below to be dutiable under paragraph 773, supra, as prepared vegetables.

> Paragraph 762 provides for "other garden and field seeds: * * *"; then follows an enumeration of many seeds which respond to the heading "garden and field seeds," including flower seeds. Immediately following these enumerations the paragraph contains the following provisions: "* * all other garden and field seeds not specially provided for, 6 cents per pound: *Provided,* That the provisions for seeds in this schedule shall include *such seeds whether used for planting or for other purposes."* (Emphasis quoted.)

> Manifestly, it was intended by the Congress to provide in this paragraph for garden and field *seeds,* whether *such seeds* were used for planting or for other purposes. Therefore, the

first question to be determined is: Does the merchandise in question, in the condition in which imported, answer to the common understanding of the meaning of the term seeds? If it does, it is included within the paragraph as flower seed, regardless of the fact that it is used for purposes other than planting. [*Brown,* supra, at p. 98.] [Emphasis quoted.]

Our appeals court found that the germinating properties of these lotus nuts had been removed by processing and, hence, they "are no longer seeds, for they have been deprived, designedly, of that which made them seeds." (P. 98.)

In the *Albers* case, reported at 19 CCPA 88, Manchurian kaoliang (millet seed) had been kiln dried in the country of origin in order to remove excess moisture, so as to avoid heating or fermentation during the long ocean voyage to the United States and, presumably, also for economy of shipment through decrease in weight. There was a concession that the millet seed there at bar had lost its germinating qualities. The paragraph construed was paragraph 761, Tariff Act of 1922, to which the proviso as to use mentioned in *Brown,* supra, was also applicable.

Our appeals court said:

> Since we held in Brown & Co. v. United States, supra, that lotus-lily seeds, which had been specially treated to destroy their germinating properties, were not seeds, we think it must follow that the merchandise at bar has, by the treatment given, been removed from that category. [*Albers,* supra, at p. 90.]

The later *Albers* case which is cited in the briefs before us (2 Cust.Ct. 194, C.D. 122), is essentially a retrial of the same issue that was before the court in the prior *Albers* case. The tariff provision construed in the later *Albers* case was paragraph 763, Tariff Act of

1930. In its opinion, this division of our court said:

> * * * It is our opinion that Congress intended to levy duty under paragraph 763 of the Tariff Act of 1930 only on such "other grass and forage crop seeds not specially provided for" as would meet the qualifications for seeds on importation and sale as established by the Federal Government. That must be so since, as the court stated in the case of United States v. Albers Bros. Milling Co. et al. in 19 C.C.P.A. (Customs) 88, T.D. 45226,
>
> > * * * the seeds provided for in these paragraphs, as far as affects the issue herein involved, are only to be regarded as seeds if they still retain their germinating qualities.
>
> It is true the issue in that case is not the same as the issue here but these principles apply with equal force here. If the germinating quality of this importation is not sufficient to meet the statutory definition of seeds, then it ought not to be so classified. The importer ought not to be mulcted in extra duty when he had no intention of importing seeds nor of selling the merchandise as seeds, but was only seeking raw material from which to make feed. [Albers Bros. Milling Co. v. United States, 2 Cust.Ct. 194, C.D. 122, at p. 195.]

In *Sokol*, supra, the issue litigated was whether imported sesame seed was taxable as seeds under the *eo nomine* classification in section 701, Revenue Act of 1936. Plaintiff claimed free entry under the provision for oil-bearing seeds and nuts in paragraph 1727, Tariff Act of 1930. This classification the Chicago collector granted. There was litigated the issue as to tariff classification.

What *Sokol* argued was that the merchandise at bar was not the sesame seed of the Revenue Act enumeration because it had lost its germinating properties and, *ergo*, was not seed of any kind.

On this issue Judge Evans, writing for this division, said:

> Plaintiff contends in his brief that the principle laid down by this court in the case of Albers Bros. Milling Co. v. United States, 2 Cust.Ct. 194, C.D. 122, is applicable here. There we held that certain kaoliang seed which had been kiln dried, and which when tested showed only 54 per centum germination, was not classifiable for customs purposes as seed. That holding was predicated upon an earlier ruling of the Court of Customs and Patent Appeals in the case of United States v. Albers Bros. Milling Co. et al., 19 C.C.P.A. (Customs) 88, T.D. 45226, where the court laid down the rule that the seeds involved in paragraph 763 of the Tariff Act of 1930, which covers "grass seeds and other forage crop seeds" as far *as affected the issue there involved*, "are only to be regarded as seeds if they still retain their germinating qualities." [Emphasis quoted.]
>
> In the Albers Bros. Milling Co. case reported in 2 Cust.Ct., supra, the importer sought to and did escape the classification made by the collector as "grass seeds and other forage crop seeds" by proof that the kaoliang seed there involved was lacking in germinating qualities sufficient to constitute a grass or forage crop seed, and, being unenumerated, it was therefore classified as an unenumerated unmanufactured article. In neither paragraph 1727 of the tariff act nor in section 701 of the Internal Revenue Act of 1936 is there anything to indicate that the classification depends upon the vitality of the seed in question. Therefore, that case is not controlling here. (*Sokol*, supra, at p. 165.)

In *Roesling*, supra, the issue was whether certain "pracaxy seeds" were to be classified as oil-bearing nuts or as tree and shrub seeds. The nuts would not germinate.

The court said:

> The evidence shows that the articles in this case will not germinate and the question arises as to whether or not they are seeds such as are provided for in paragraph 764. It has been held in numerous decisions that seeds which will not germinate are not "seeds" within the meaning of the provisions of the paragraph and its predecessors in former tariff acts. Brown & Co. et al. v. United States, 14 Ct.Cust.Appls. 96, T.D. 41588; United States v. Albers Bros. Milling Co. et al., 19 C.C.P.A. (Customs) 88, T.D. 45226; S. B. Penick & Co. v. United States, 40 Treas. Dec. 430, Abstract 44395; W. J. Bush & Co. v. United States, 43 Treas.Dec. 321, T.D. 39569, G.A. 8630; Albers Bros. Milling Co. v. United States, 2 Cust.Ct. 194, C.D. 122; Song Kee & Co. v. United States, 7 Cust.Ct. 111, C.D. 548. In harmony with the decisions above cited, we find that the imported articles are not seeds within the meaning of the provisions in paragraph 764 and hold that they were incorrectly classified by the collector. (*Roesling*, supra, at pp. 120–1.)

The *Beurhaus* case presented no such issue as that which is before us here. The merchandise in *Beurhaus*, although described in the entry papers as raw pumpkin seeds, actually consisted of pumpkin seed kernels, not whole pumpkin seeds, and after the kernels had been removed from the pods they were dried to remove the moisture which had been added to facilitate the process of shelling the kernels.

On these facts, the court held the pumpkin seed kernels properly classifiable under the enumeration for vegetable substances, crude or unmanufactured, in paragraph 1722, and not as unenumerated articles under paragraph 1558.

This brings us to a consideration of *Lineiro*, supra.

The merchandise in *Lineiro* was milo maize, or grain sorghum. The official laboratory tests showed that a little more than 75 per centum was pure, live seed, but there was also evidence that much of the merchandise was cracked and shrivelled or otherwise damaged. The collector, on the basis of the laboratory report, had classified the merchandise as seed. Plaintiff claimed, alternatively, classification as a crude or unmanufactured vegetable substance, duty free, or under paragraph 1558 as an unenumerated unmanufactured article.

The trial court (Enrique C. Lineiro v. United States, 21 Cust.Ct. 48, C.D. 1126) held classification should be under paragraph 1558. The decision turned on a finding that plaintiff had overcome the presumption that the collector had correctly found all the facts necessary for classification as seed. The court did not question, and indeed affirmed, the established rule that seeds which have lost their germinating qualities are not seeds within the tariff enumeration.

When the case came before our appeals court, the issue was not, as here, whether seed with less than 75 per cent germinating capability was dutiable as seed, but rather whether plaintiff had proved that such was the fact by proofs sufficient to rebut the correctness of the official laboratory test. Our appeals court found nothing in the record establishing or tending to establish that the merchandise contained less than 75 per cent of pure, live seed.

> Determination of issues in customs litigation may not be based on supposition. We do not see how it can be reasoned that because the involved merchandise contained more shrivelled, cracked, and frost-bitten grain, that in the absence of proof it can be held to contain less than 75 per centum of pure, live seed. At most such supposition is merely a speculation or guess. (United States v. Lineiro, 37 CCPA 5, C.A.D. 410, at p. 10.)

■ Plaintiff rests its case for tariff classification of the merchandise at bar

under paragraph 762 on the priority of the *eo nomine* enumeration for seeds in that paragraph over the n. s. p. f. enumeration in paragraph 1558. If these are indeed such seeds as paragraph 762 enumerates, then plaintiff's argument is well taken. There is no doubt that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article." Nootka Packing Co. et al. v. United States, 22 CCPA 464, T.D. 47464.

The issue before us, then, is whether the enumeration of paragraph 762 has been so limited as to exclude from classification as seeds, those articles which would be seeds if they had 75 per cent or more germinating capability.

The crux of plaintiff's argument on this issue is stated in its brief as follows: "It is submitted that even though the imports may not have had the required germinability they still would not lose their status or classification under" paragraph 762, as seeds. (Plaintiff's brief, p. 6.)

Plaintiff seems to rely, in support of *that* argument, chiefly on *Sokol,* supra. As earlier recited, the *Sokol* case involved an issue of liability to internal revenue tax. There was no issue of tariff classification before the court. Plaintiff had accepted without protest the collector's tariff classification of non-germinating sesame seed as oil-bearing seeds, under paragraph 1727.

We do not need to consider, as we did not consider in *Sokol,* whether oil-bearing seeds that fail to meet a certain germinability test are, or are not, the oil-bearing seeds of paragraph 1727. What we are called upon to decide is whether the seeds at bar, which concededly do not meet the specified germinability test, are within the designation for seeds in paragraph 762. We hold that they are not within the tariff enumeration of seeds.

With judicial decisions so holding under prior tariff acts, Congress reenacted a similar provision in the Tariff Act of 1930. This is strongly persuasive of a legislative intent to approve the judicial interpretation.

We do not need to consider any argument as to whether these seeds were or were not for planting. Clearly, if this merchandise were found to be within the designation of paragraph 762, the fact that the seeds were not intended for planting would not remove it from that designation.

We now turn to plaintiff's alternative claim for classification, under paragraph 1558, at 5 per cent ad valorem, as a nonenumerated raw or unmanufactured article. The collector's classification was as an unenumerated article, manufactured in whole, or in part, dutiable at 20 per cent *ad valorem.*

Not every application of labor suffices to constitute a process of manufacture. What occurred here was a process of hulling, together with sorting and grading.

There is nothing in the record before us to indicate that any other process was applied to these hulled seeds. Nothing was added to or taken from the seed kernels, although those that emerged whole from the hulling process and those broken in that process were sorted and thus graded, as being either whole or broken.

In George Beurhaus Co. et al. v. United States, 32 Cust.Ct. 269, C.D. 1612, cited in plaintiff's brief and commented on by defendant, the trial court did not get to a consideration of plaintiff's alternative claim for classification under paragraph 1558 as a raw or unmanufactured article, because we sustained plaintiff's claim to classification *eo nomine* as a crude or unmanufactured *drug.* No appeal was taken in *Beurhaus.*

Here the competition now under our consideration is not between some *eo nomine* tariff specification and the un-

enumerated classification of paragraph 1558. Having found that these are not seeds, the issue simmers down to the two unclassified enumerations. Are these unenumerated articles that are "raw or unmanufactured", or are they unenumerated articles that have been "manufactured, in whole or in part"?

A case in which that was also in issue, is C. S. Emery & Co. v. United States, 15 Cust.Ct. 22, C.D. 934. "The next question is whether the merchandise is dutiable as a nonenumerated manufactured or a nonenumerated unmanufactured article." (p. 25.)

In *Emery,* the court cited Ishimitsu v. United States, 11 Ct.Cust.Appls. 186, T. D. 38963, in which our appeals court carefully spells out the criteria by which the process of manufacture, for purposes of tariff classification, is to be judged.

The determination of what is a "manufacture" of a given article, or when a thing is "manufactured" within the contemplation of tariff statutes, has occupied the attention of the courts in a great number of cases, to review a majority of which is a task of no small magnitude, and which we do not deem it necessary to undertake.

The derivation from the Latin *manus,* hand, and *facio,* to make, of "manufacture" as a noun, indicates that its original meaning was something made by hand, while as a verb it would mean the hand processing necessary to produce the thing. While this meaning has been enlarged, yet, there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process. (p. 189.)

See also, as to like criteria, A. N. Deringer, Inc. et al. v. United States, 40 Cust. Ct. 261, C.D. 1992.

We are not persuaded that by merely separating these seeds from their hulls, and sorting the whole seeds from those that became broken, there was created an article with "a distinctive name, character or use, different from that originally possessed" by the unhulled seeds. Defendant cites no authority for its assertion to the contrary.

The claim for paragraph 762 classification is overruled. The claim, as to both the hulled and unhulled seeds with a germinating capability of less than 75 per cent, for classification under paragraph 1558 as raw or unmanufactured, nonenumerated articles, dutiable at 5 per centum, is sustained.

Judgment will be entered accordingly.

RICHARDSON, J., concurs.

LANDIS, Judge (dissenting):

I cannot agree that hulled seeds are not manufactured, in whole or in part, under paragraph 1558, as modified, simply because they do not have a different name, character, or use from that which they possessed as unhulled seeds, as the majority opinion states in this case.

Ishimitsu v. United States, 11 Ct.Cust. Appls. 186, 189, T.D. 38963, aptly illustrates that the tariff terms "manufacture" and "manufactured" have occupied the attention of the courts in a great number of cases. They still do. E. g., United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809; B. A. McKenzie & Co., Inc., et al. v. United States, 47 CCPA 42, C.A. D. 726; J. B. Henriques, Inc. v. United

States, 46 CCPA 54, C.A.D. 695; United States v. Charles H. Demarest, Inc., 45 CCPA 109, C.A.D. 682; United States v. C. J. Tower & Sons, 44 CCPA 1, C.A.D. 626; Chas. H. Demarest, Inc. v. United States, 44 CCPA 133, C.A.D. 650; Werner G. Smith Co., Div. Archer Daniels Midland Co. v. United States, 40 CCPA 90, C.A.D. 503; Balfour Guthrie & Co., Ltd. v. United States, 39 CCPA 12, C.A.D. 457; United States v. Nippon Co. et. al. etc., 32 CCPA 164, C.A.D. 303; United States v. Wilkinson Process Rubber Sales Corp., 22 CCPA 60, T.D. 47051.

"As this and other courts have frequently said, it is not always easy to determine, as a matter of law, when a thing is the manufacture of another thing. The difficulty of such a determination arises largely from the different expressions used by Congress in the various tariff acts. * * *." United States v. Wilkinson Process Rubber Sales Corp., supra, at page 64. Since there is not one rule or principle of law that can dispose of the issue in all cases, J. B. Henriques, Inc. v. United States, supra, each case, when you come down to it, must stand on its own particular facts.

The applicable law under paragraph 1558 is clear. "To constitute an article 'manufactured' it is not necessary that the article be converted into a new and different article, having a distinctive name, character or use different from that of the original article (such would be the requirement to constitute an article a 'manufacture'), but only that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material. * * *." Chas. H. Demarest, Inc. v. United States, supra, 44 CCPA at page 137 (holding that where palmyra fibers were trimmed to advance the merchandise towards its intended use, the fibers were manufactured under paragraph 1558.)

The facts here are not in dispute. The merchandise is hulled sunflower seeds processed from their natural unhulled state by what is, in my opinion, a manufacturing process.

Mr. Raymond Pollard, an executive with Pollard Brothers which produced the litigated merchandise, testified. He had been in business 30 years. He stated that the producer gets the seed in its natural state, in bulk, removed from the sunflower. (R. 6.) The seed is hulled by being fed, in its natural state, into a machine shaped, Mr. Pollard said, like a washing machine and in which the seed is forced against a rubber roller with considerable speed of sufficient force to crack the hull open. The hull, he said, is thus separated from the seed and each goes off into different compartments. Nothing is added to the seed. (R. 12, 13.)

Under cross-examination, Mr. Pollard further stated that in the hull cracking process some of the seed also gets broken. This requires an additional cleaning process in which the seed is passed over a "screen gravity separator which removes the broken particles and light flaky seeds." (R. 19, 20.) Broken seeds are exported as seconds. Hulled seed is worth more than unhulled seed. Also, it is quite clear that hulled seed is processed and sold primarily for human consumption, whereas unhulled sunflower seed is sold for bird feed and seed broken in the hulling process is sold for bird feed.

Admittedly, hulled seeds are processed from unhulled seeds. "The sole basis of distinction between the 10% and 20% duty rates in * * * paragraph [1558] depends on whether the import is unmanufactured, or manufactured, in whole or in part. Thus, it seems clear * * * that there is no alternative but to regard the process of producing the imported merchandise as a, if not the, decisive factor in determining which of the two rates is applicable." Werner G. Smith Co. v. United States, supra, 40 CCPA at page 99, Atlas Canning Company, Inc. v. United States, 41 Cust.Ct. 242, C.D. 2047.

I would overrule the protests on the ground that the hulled seeds are manufactured, at least in part, under paragraph 1558. A Millner Co. v. United States, 46 CCPA 97, C.A.D. 706.

Protests 65/22502, etc.

### SCHEDULE OF PROTESTS

| Protest | Plaintiff | Entry |
|---|---|---|
| 65/22502-8180 | John V. Carr & Son, Inc. | 9305 |
| | | 10568 |
| | | 15338 |
| | | 22310 |
| | | 22839 |
| | | 29849 |
| | | 33947 |
| 65/23860-8228 | | 31348 |
| 66/1482-8238 | | 24195 |

Entries retained for appeal time.